Henry Carl DEAN, Plaintiff-Appellee,

v.

**AMERICAN SECURITY INSURANCE COMPANY, Defendant-Appellant.**

No. 76–3272.

United States Court of Appeals, Fifth Circuit.

Sept. 23, 1977.

Rehearing and Rehearing En Banc Denied Oct. 26, 1977.

David R. Aufdenspring, R. Carl Cannon, Atlanta, Ga., for defendant-appellant.

Bruce D. Duncan, Charles E. Moore, Jr., Atlanta, Ga., for plaintiff-appellee.

Before AINSWORTH and MORGAN, Circuit Judges, and LYNNE, Senior District Judge.[*]

LYNNE, District Judge:

Presented for review is a pretrial ruling of the district court in a suit which charges appellant, appellee's former employer, with employment discrimination in violation of the Age Discrimination in Employment Act (ADEA or the Act), 29 U.S.C. § 621, et seq. Plaintiff is seeking reinstatement, back pay, liquidated damages, general damages

(compensatory damages for psychosomatic injuries), and punitive damages.

Contending that neither general nor punitive damages are recoverable under the ADEA, appellant moved to strike plaintiff's prayer therefor. In an order of June 30, 1976, the trial court overruled such motion and certified the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We reverse.

The scope of recoverable damages under the ADEA is governed by Section 7 [1] which incorporates part of the enforcement provisions of the Fair Labor Standards Act (FLSA).[2] Section 7(b) states:

> The provisions of this Act shall be enforced in accordance with the powers, remedies and procedures provided in sections 11(b), 16 (except for subsection (a) thereof), and 17 of the Fair Labor Standards Act of 1938, as amended, and subsection (c) of this Act shall be deemed to be a prohibited act under section 15 of the Fair Labor Standards Act of 1938, as amended. Amounts owing shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 16 and 17 of the Fair Labor Standards Act of 1938, as amended. *Provided*, that liquidated damages shall be payable in cases of willful violations . . . .[3]

Reading together the ADEA and the identified sections of the FLSA, an employer is subject to liability to the employee for "unpaid minimum wages or unpaid overtime compensation" and that amount may be doubled to provide "liquidated damages", in cases of willful violations.

In addition, section 7(b) of the ADEA authorizes a court to grant such "legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for

[*] Senior District Judge of the Northern District of Alabama, sitting by designation.

1. 29 U.S.C. § 626.

2. 29 U.S.C. § 201, et seq.

3. See 29 U.S.C. §§ 216(b), 260, 626(b).

amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section."

■ Appellee contends that the phrases in section 7(b) (authorizing "legal or equitable relief . . . without limitation") and section 7(c) (authorizing "legal or equitable relief . . ..") must be construed to sanction all traditional legal relief, including the award of punitive and general damages, and thus would "effectuate the purposes" of the ADEA. We disagree. The authorization of "legal or equitable relief" must be read, not in isolation, but in conjunction with the other provisions of the Act, the policies they further and the enforcement framework they envision.

■ Under the Act, administrative remedies and suits brought by the Secretary of Labor are patently encouraged and preferred to private actions. The report of the Committee on Labor and Public Welfare reflects this preference:

> A condition precedent to the bringing of an action by an individual is that he must give the Secretary 60 days notice of his intention to do so. This is to allow time for the Secretary to mediate the grievance. It is intended that the responsibility for enforcement vested in the Secretary by Section 7 be initially directed through informal methods of conciliation and that the formal methods be applied only if voluntary compliance cannot be achieved.[4]

Indeed, the filing of a complaint posited upon the ADEA by a private individual without first having given the Secretary 60 days notice of his intention to do so is proscribed. Moreover, if the Secretary commences an enforcement action within such sixty-day period the individual's right to maintain a private suit terminates. 29 U.S.C. § 626(c), (d).

## GENERAL DAMAGES

■ We are in accord with the result reached in *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 884 (3rd Cir. 1977), in rejecting a claim for damages for pain and suffering in a private action brought under the ADEA. To restate the rationale of the opinion therein and to reexamine in depth its review of the legislative history of the Act in question would involve supererogation.

To be sure, the Congress was not unaware of, or insensitive to psychological and other damages incident to age-based employment discrimination.[5] It is more logical to infer from the remedial enforcement scheme contemplated by the Act legislative intent to prevent such injuries through compliance therewith, and in the event of non-compliance, prompt reinstatement, promotion or other equitable relief coupled with lost wages, and liquidated damages, if appropriate, rather than to read into the superficial phrase "Legal Relief"[6] wrenched from context, an intent to authorize the recovery of general damages after such injuries have been inflicted. The dominant purpose of the Act is easily discernable. It was enacted to prohibit discrimination in employment on the basis of age.[7]

---

**4.** 113 Cong.Rec. 31250 (Nov. 6, 1967).

**5.** *See, e. g.,* 113 Cong.Rec. 31254 (Nov. 6, 1967) (Remarks of Sen. Javits); 113 Cong.Rec. 34745 (Dec. 4, 1967) (Remarks of Rep. Eilberg); 113 Cong.Rec. 34741 (Dec. 4, 1967) (Remarks of Rep. Steiger).

**6.** Appellant attaches undue significance to Congress' rejection of early drafts of Section 7 which authorized equitable relief but not legal relief, in favor of the current language which specifies both equitable and legal relief. The amendment to include legal relief may suggest the phrase was intended to have some meaning, but it does not by itself justify awards of all forms of legal relief. *See* 113 Cong.Rec. 2199 (1967); 113 Cong.Rec. 2467 (1967); 113 Cong.Rec. 31248–49 (1967).

The provision for legal relief is not, as appellant contends, rendered meaningless by disallowance of general and punitive damages. Lost wages constitute legal relief under the FLSA and their adoption by Section 7(b) of the ADEA explains the use of the term "legal" in Section 7(c).

**7.** Congress expressed its preference for the administrative process, avoidance of litigation and prevention of "overanxiety" on the part of American business. *See* 113 Cong.Rec. 31254 (Nov. 6, 1967) (Remarks of Sen. Javits); 113

The silence of the Act with respect to general damages is entirely consistent with legislative intent to abstain from introducing a volatile ingredient into the tripartite negotiations involving Secretary, employee and employer which might well be calculated to frustrate rather than to "effectuate the purposes" of the Act.[8]

### PUNITIVE DAMAGES

■ Appellee's claim for punitive damages fares no better. As is true of his claim for general damages it is squarely based upon the inclusion in section 7(b) of the Act of the general reference to "legal . . . relief as may be appropriate to effectuate the purposes of this Act . . . .", 29 U.S.C. § 626(b).

Four aspects of section 7(b) deserve evaluation in determining the propriety of awarding punitive damages thereunder:

(1) the availability of employment, reinstatement, or promotion relief;

(2) the availability of amounts deemed to be back pay;[9]

(3) the availability of liquidated damages for willful violations; and

(4) no reference to punitive damages.

In concluding that potential recovery of general damages in a private action is incompatible with the remedial framework of the Act we have adverted to (1) and (2). While the *Exxon* court was not required to address the issue of punitive damages its penetrating analysis led to the observation that

"Congress saw fit to restrict the penalty provisions of the Act to doubling the amount of lost earnings. To allow psychic distress awards in addition would in a very real sense thwart the limitation Congress thought advisable to impose."[10]

The provisions for liquidated damages for willful violation of the Act and its silence as to punitive damages convinces us that the omission of any reference thereto was intentional. In 1968, only one year after the passage of the ADEA, Congress passed the fair housing provisions of Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601–3619. Section 3612(c) thereof expressly authorizes the recovery of punitive damages, providing as follows:

"The Court, . . . may award to the plaintiff *actual damages and not more than $1,000 punitive damages* . . . ." [Emphasis supplied].

Thus it is obvious that, if Congress believed punitive damages necessary to eliminate discrimination in employment based on age, it knew exactly how to provide for them.

Our opinion that Congress preferred liquidated damages in lieu of punitive damages is supported by the following remarks of Senator Jacob Javits appearing before the Subcommittee on Labor of the Senate Labor and Public Welfare Committee:

" . . . the criminal penalty in cases of willful violations has been eliminated and a double liability substituted. This will furnish an effective deterrent to willful violations."[11]

---

Cong.Rec. 31253 (Nov. 6, 1967) (Remarks of Sen. Yarbrough); 113 Cong.Rec. 31250 (Nov. 6, 1967) (Committee report); 113 Cong.Rec. 34745 (Dec. 4, 1967) (Remarks of Rep. Reid and Rep. Daniels); 113 Cong.Rec. 34747 (Dec. 4, 1967) (Remarks of Rep. Dent).

**8.** Several courts have refused to allow compensatory damages for pain and suffering because the ability to recover such a subjectively measured award would severely cripple the mediation process. *Rogers v. Exxon Research & Engineering Co., supra; Cobb v. Chevron* (N.D.Ga. April 25, 1977); *Looney v. Commercial Union Assurance Co.*, 428 F.Supp. 533 (E.D.Mich.1977); *Sant v. Mack Trucks*, 424 F.Supp. 621 (N.D.Cal.1976); *contra, Combes v. Griffin Television, Inc.*, 421 F.Supp. 841, 847

(N.D.Cal.1976); *Bertrand v. Orkin Exterminating Co.*, 419 F.Supp. 1123, 1132–33 (N.D.Ill. 1976), *aff'd on rehearing*, 432 F.Supp. 952 (N.D. Ill.1977).

**9.** Section 7(b) of the Act specifically provides that "[a]mounts owing to a person as a result of a violation of this Act shall be deemed to be unpaid minimum wages or unpaid overtime compensation." Such amounts are lost wages or back pay. *See Pons v. Lorillard*, 69 F.R.D. 576 (M.D.N.C.1976).

**10.** 550 F.2d at 840.

**11.** Hearings on S. 788 and S. 830 before the Subcom. on Labor of the Senate Labor and Public Welfare Comm., 90th Cong., 1st Sess., 113 Cong.Rec. 7076 (1967).

It is quite apparent that Senator Javits, sponsor of the original bill and the amendments thereto which appear in the final enactment, held the view that liquidated damages could effectively supply the deterrent and punitive damages which both criminal penalties and punitive damages normally serve.[12]

In summary, we hold that neither general damages nor punitive damages are recoverable in private actions posited upon the ADEA. We therefore reverse and remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

---

**12.** 113 Cong.Rec. 2199 (Feb. 1, 1967); 113 Cong.Rec. 31254 (Nov. 6, 1967).