**Miguel VAZQUEZ et al.,**
**Plaintiffs-Appellees,**

v.

**EASTERN AIR LINES, INC.,**
**Defendant-Appellant.**

**No. 77–1563.**

United States Court of Appeals,
First Circuit.

June 21, 1978.

---

Edda Ponsa Flores, San Juan, P. R., with whom Francisco Ponsa Feliu, Francisco Ponsa Flores, San Juan, P. R., and Lawrence E. Duffy, Rio Piedras, P. R., were on brief, for defendant-appellant.

Antonio Moreda Toledo, San Juan, P. R., with whom George L. Weasler, Santurce, P. R., was on brief, for plaintiffs-appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

We face the issue of whether damages for pain and suffering are authorized under the Age Discrimination in Employment Act of 1967 (ADEA). The district court, in a well-reasoned opinion, found that such damages were justified under the Act, but, recognizing it as a controlling question of law as to which there was a substantial ground for difference of opinion, certified it as an interlocutory issue for appeal. 28 U.S.C. § 1292(b).

The Act proscribes discrimination against the protected class of individuals, forty to sixty-five years of age, on the basis

of age. Congress was moved to enact the statute because of incorrect assumptions and misconceptions concerning productivity and age. 113 Cong.Rec. 31254, 34742, 34752 (1967). The insidious effects of being barred at the door of the employment market were recognized as undermining one's self-esteem in a work-oriented society. *Id.* at 34745. In line with the broad humanitarian goals of the statute, liberal construction should be favored. *Moses v. Falstaff Brewing Corp.*, 525 F.2d 92, 93 (8th Cir. 1975). Any interpretation should strive to further a substantial goal of the Act. *Id.* at 94. With this framework in mind, we address the specific question presented.

Two other circuit courts have recently faced the question here, *viz.*, whether compensatory damages are permissible in a suit brought pursuant to the ADEA, and have answered in the negative. *Dean v. American Sec. Ins. Co.*, 559 F.2d 1036 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3d Cir. 1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). After a thorough review and analysis of the issue, outlined below, we arrive at the same result.

The remedy provisions of the ADEA, 29 U.S.C. § 626(b), (c), indicate that enforcement is to be sought pursuant to certain enforcement provisions of the Fair Labor Standards Act, specifically sections 211(b), 216 (except for subsection (a) thereof), and 217 of title 29. The ADEA further provides:

> Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: <u>Provided,</u> That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant <u>such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation</u> judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

(emphasis added). 29 U.S.C. § 626(b). *See also* 29 U.S.C. § 626(c). While the underscored language appears to warrant the broad interpretation given by the district court,[1] that language is limited by the reference to the enforcement procedures authorized under the FLSA and the fact that amounts owing as a result of a violation are to be treated as if they were unpaid minimum wages or unpaid overtime compensation.

The Fair Labor Standards Act was enacted in 1938; during the intervening years, courts have frequently had the opportunity to construe various sections of the statute. We have found, after a careful review, that, other than those damages specifically provided for in the statute, *i. e.*, the amounts owing by employers who violate the Act and an additional amount as liquidated damages, 29 U.S.C. § 216(b),[2] compensatory damages have not been permitted. *See e. g., Bonner v. Elizabeth Arden, Inc.*, 177 F.2d 703, 705 (2d Cir. 1949); *Powell v. Washington Post Co.*, 105 U.S.App.D.C. 374,

---

1. Several other courts have interpreted the statute as permitting compensatory (and frequently punitive) damages. *See e. g., Coates v. National Cash Register Co.*, 433 F.Supp. 655 (W.D.Va.1977); *Combes v. Griffin Television, Inc.*, 421 F.Supp. 841 (W.D.Okl.1976); *Bertrand v. Orkin Exterminating Co.*, 432 F.Supp. 952 (N.D.Ill.1977); *Rogers v. Exxon Research & Engineering Co.*, 404 F.Supp. 324 (D.N.J.1975), *rev'd*, 550 F.2d 834 (3d Cir. 1977). *Contra, Platt v. Burroughs Corp.*, 424 F.Supp. 1329 (E.D.Pa.1976); *Sant v. Mack Trucks, Inc.*, 424 F.Supp. 621 (N.D.Cal.1976); *Looney v. Com-*

*mercial Union Assur. Companies*, 428 F.Supp. 533 (E.D.Mich.1977).

2. The statute, in pertinent part, reads as follows: "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

375, 267 F.2d 651, 652, *cert. denied*, 360 U.S. 930, 79 S.Ct. 1449, 3 L.Ed.2d 1544 (1959); *Martinez v. Behring's Service, Inc.*, 501 F.2d 104, 105 (5th Cir. 1974). *But see id.* at 105–108 (dissenting opinion); *Fagot v. Flintkote*, 305 F.Supp. 407 (E.D.La.1969).

■ If, therefore relief is to be had solely by reference to the FLSA, the solid line of cases holding that no compensatory damages are available under the Act, presents a formidable barrier to those seeking damages for pain and suffering. The Supreme Court, speaking recently to the separate issue of whether right to a jury trial is assured a private litigant suing under the ADEA, referred to the enforcement provision of the ADEA, 29 U.S.C. § 626(b), which indicated that the ADEA was to be enforced in accordance with the "powers, remedies, and procedures" of the FLSA. *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). The Court frequently alluded to the ADEA's selective adoption of the enforcement provisions of the FLSA.

> This selectivity that Congress exhibited in incorporating provisions and in modifying certain FLSA practices strongly suggests that but for those changes Congress expressly made, it intended to incorporate fully the remedies and procedures of the FLSA.

*Id.* at 582, 98 S.Ct. at 871. The Court, in concluding that the ADEA did guarantee the right to a jury trial, observed that it had been long established that one suing under the FLSA had the right to a trial by jury. The Court continued that Congress, by adopting the enforcement procedures of the FLSA for implementation of the ADEA, was presumed to be aware of the judicial and administrative interpretations given that statute. *Id.* In like vein, we conclude that Congress is presumed to know, *see Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), that courts have consist-

ently refused to grant FLSA litigants compensatory damages, other than those allowed under 29 U.S.C. § 216(b).

■ A review of the legislative history of the ADEA discloses that the Act intentionally eschewed other avenues of enforcement in favor of the selective adoption of FLSA provisions. 113 Cong.Rec. 7076, 31250 (1967). Senator Javits, an early proponent of age discrimination legislation, introduced the amendment regarding enforcement procedures which ultimately became section 7 of the ADEA, 29 U.S.C. § 626 In testimony before the Labor Subcommittee of the Senate and Public Welfare Committee, Senator Javits explained:

> *First the administration and enforcement of the law is placed in the hands of the Wage-Hour Division, and the method of enforcement almost exactly parallels that used in minimum wage and hour cases.*
>
> . . .
>
> *Second, the criminal penalty in case of willful violation has been eliminated and a double damage liability substituted.* This will furnish an effective deterrent to willful violations. . . .

*Id.* (emphasis in original).[3] Later, in floor debates on the bill, Senator Javits reiterated, "[t]he enforcement techniques provided by S. 830 [*i. e.*, ADEA] are directly analogous to those available under the Fair Labor Standards Act; in fact, S. 830 incorporates by reference, to the greatest extent possible, the provisions of the Fair Labor Standards Act." *Id.* at 31254. Clearly, it was the intent of Congress to graft enforcement provisions of the FLSA onto the ADEA in instances where appropriate.

This does not, however, conclude our inquiry. While the enforcement provision of the FLSA is adopted by the ADEA, there is the expansive statutory language (cited and underscored, *supra* at 109, in the ADEA which is absent from the FLSA. This sug-

---

**3.** It might also be argued that, since the statute provides its own liquidated damages provision in cases of willful violation, those damages and no others are to be permitted. The effect of a liquidated damages clause in a contract is to preclude other amounts of recovery. Where

damages are difficult of proof and where the stipulated amount is a reasonable approximation of the actual harm, the provision will normally be upheld. *See* Restatement (Second) of Contracts § 339(2) (Tent.Draft No. 12, 1977).

gests to us the propriety of looking to the reasonableness of the expectation that the FLSA remedy will effectuate the purposes of the age discrimination act. The Third Circuit in *Rogers*, 550 F.2d 834, and the Fifth Circuit in *Dean*, 559 F.2d 1036, both endorsed the view that compensatory damages would be incompatible with the general compliance scheme envisioned by the statute. They suggested that such damages could undermine the conciliation process to be undertaken by the Secretary of Labor prior to the inauguration of any private suit. 29 U.S.C. § 626(d). The Secretary is given the authority to seek voluntary compliance for a period of sixty days prior to the time an aggrieved individual can file suit. The argument is that, if an individual realized that he could obtain compensatory damages in a successful suit against the employer, the individual might be less likely to settle the case voluntarily, 550 F.2d at 841. While we appreciate the concern expressed by both circuits in *Rogers* and *Dean*, we are not persuaded that a contrary result might not be as logically reached. If an employer realizes that the most it stands to lose in a private suit is lost wages, possibly doubled for a willful violation, we think it arguable that the employer might be less likely to compromise the claim short of a lawsuit. We find added support for our position in the Report prepared by the Secretary, pursuant to 29 U.S.C. § 632, covering activities under the ADEA during 1976. *Age Discrimination in Employment Act of 1967: A Report Covering Activities Under the Act During 1976 Submitted to Congress in 1977 in Accordance with Section 13 of the Act* (hereafter "Report"). The statistics compiled by the Secretary indicate that in fiscal year 1976, 7,877 establishments were contacted for compliance action; of those, only 2,490 or 32% were resolved by conciliation. *Id.* at 11. Although the Report states that further conciliation is attempted after the Secretary receives the statutory "intent to sue" letter, 29 U.S.C. § 626(d), no statistics are provided in the Report to indicate the number of successful efforts. *Id.*

These figures indicate that conciliation does not, in fact, successfully resolve the great majority of cases brought by the Secretary. When that fact is coupled with the very limited compliance effort on the part of the Department of Labor,[4] the rationale of limiting an employee's remedies in order to promote conciliation attempts by the Secretary appears open to question. According to the United States Bureau of Labor Statistics, as of October, 1976, there were 36,-824,000 people in the civilian work force within the age bracket forty to sixty-five. *Id.* at 39. When this vast population is contrasted with the number of compliance actions brought by the Secretary (8,318 in 7,877 establishments in 1976), it can be fairly concluded that the overwhelming majority will be forced to seek individual compliance with the Act should discrimination occur. This tableau also suggests that the majority of individuals aggrieved under the Act will have to endure the rigors and long-remarked delays of a lawsuit. Since, by definition, relatively fewer productive years are left to these employees, the problems attending a protracted lawsuit are especially pronounced.

Although we question the efficacy of compliance activities undertaken by the Department of Labor, we nonetheless feel that a valid statutory purpose is to be attained by pursuing voluntary compliance in lieu of hard-fought lawsuits, with substantial compensatory damages hanging in the balance. We come to this position on the basis of several factors. It is clear from the legislative history that Congress felt that most of the discrimination against older employees was premised on lack of understanding and outworn prejudices. Congress indicated a preference for educating employers to the reality that older employees are no less

---

4. The number of individuals aided by the Department of Labor actually declined from 1975 to 1976, from 3,376 in fiscal year 1975 to 2,351 in fiscal year 1976. *Report* at 13. We do not intend, by putting forth these figures, to suggest any criticism of the Department of Labor. Limited resources and limited personnel account in large part for the restricted scope of the Department's compliance activity.

productive on the average than younger ones. As a result, emphasis was placed on the role of informing prospective employers of facts which demonstrated the desirability of hiring older workers. 113 Cong.Rec. 31253 (1967). According to the Secretary of Labor's report to Congress concerning age discrimination, the invidious hostility which permeates other forms of discrimination (*e. g.*, race, national origin, creed) is not present among those with age prejudice. The discrimination is primarily one of incorrect assumptions of the process of aging and unwarranted conclusions as to its effects on productivity. *U. S. Dep't of Labor, Report to the Congress on Age Discrimination in Employment under Section 715 of the Civil Rights Act of 1964*, at 6–8 (1965). *See also* 113 Cong.Rec. 34742, 34752 (1967); Note, *The Age Discrimination in Employment Act of 1967*, 90 Harv.L.Rev. 380, 383–388 (1976).

■ Mindful of the admonition of Judge Learned Hand that statutes "should be construed, not as theorems of Euclid, but with some imagination of the purposes which lie behind them [ ]" *Lehigh Valley Coal Co. v. Yensavage*, 218 F. 547, 553 (2d Cir. 1914), we believe that Congress has provided adequate means to effectuate the goal of promoting employment of the older worker.[5] Because the findings of the Secretary indicate that views toward older workers involve fundamentally erroneous conceptions capable of correction, we feel it consistent with Congress' intention to defer to the compliance and educational efforts of the Department of Labor and the FLSA enforcement procedures. We note that the Age Discrimination in Employment Act is of relatively recent origin and that the Department of Labor has been steadily increasing its compliance activities, *Report* at 10, *but see* n. 4, *supra*. We are alert to the responsibilities of federal courts "to provide such remedies as are necessary to make

effective the congressional purpose." *J. I. Case Co. v. Borak*, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964). *See also Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Cort v. Ash*, 422 U.S. 66, 80–85, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *McDaniel v. University of Chicago*, 548 F.2d 689, 694–695 (7th Cir. 1977), *cert. denied*, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978). Remembering this duty, we hold today only that, on the basis of the facts presented to us, inferring a damage remedy is not necessary to guarantee effectuation of the ADEA's broad goals. Our holding is a limited one. The district court's able opinion forcefully presented arguments favoring a damage remedy. Congress determined that the problems of age discrimination in employment warranted national remedial legislation. While we find that the statutory language, coupled with congressional purpose, indicates the correctness of limiting damages to those provided by the FLSA, we do not suggest permanently foreclosing remedies which might prove essential to guarantee the integrity of the statute.[6] It may be at some future date it will be shown that without a damage remedy the purposes of the Act cannot be realized. We are not, however, faced with that situation today.

*The order is reversed.*

---

**5.** Orders to force employment, reinstatement or promotion are also available. 29 U.S.C. § 626(b).

**6.** Parenthetically, we note that a private remedy was first inferred under § 27 of the Securi-

ties and Exchange Act of 1934, 15 U.S.C. § 78aa, thirty years after its passage. *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).