Robert P. DOUGLAS

v.

AMERICAN CYANAMID COMPANY, Donald Faccio and Donald E. Rowland.

Civ. No. B–78–465.

United States District Court, D. Connecticut.

May 8, 1979.

---

David S. Golub, Silver, Golub & Sandak, Stamford, Conn., for plaintiff.

Linda Randell, Wiggin & Dana, New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS AND STRIKE

ELLEN B. BURNS, District Judge.

Plaintiff, formerly employed by the defendant corporation, has filed an action for monetary damages and injunctive relief under the Age Discrimination in Employment Act [hereinafter ADEA], 29 U.S.C. § 621 *et seq.* The facts alleged in plaintiff's complaint are as follows: Plaintiff was employed by the American Cyanamid Company [hereinafter American Cyanamid] from 1957 to December, 1977, for the first ten years at the Research Laboratories and from October, 1970, to December 31, 1977, for the Davis & Geck division. At the time of his termination he was 58 years old and employed as a design engineer, earning $21,500 per year. On or about June 17, 1977, plaintiff received a notice of termination effective December 16, 1977, from his supervisor, defendant Faccio, for alleged poor performance. Defendant Faccio allegedly disseminated to various individuals false accusations in a memorandum dated June 22, 1977, which accusations Faccio is claimed to have retracted at a later date. On or about December 16, 1977, defendant Rowland prepared an unemployment notice which stated that plaintiff had been terminated because of his inability to satisfy all demands of the job. Plaintiff's first count arises under ADEA; plaintiff's second count is based upon defamation. Among the relief sought is: (1) reinstatement with full seniority and benefits; (2) monetary compensation for full wages and other benefits; and (3) compensatory and punitive damages for the damage to plaintiff's reputation and mental anguish, and other financial loss suffered by the plaintiff.

Defendant American Cyanamid Company has moved to: (1) dismiss or strike the prayer for compensatory and punitive damages with respect to Count I; (2) dismiss

Count II for lack of pendent jurisdiction; and (3) strike certain allegedly immaterial allegations in the complaint. Defendants Faccio and Rowland have filed identical motions.[1] For the reasons stated herein, the motions to dismiss the prayer for compensatory and punitive damages with respect to Count I and to dismiss Count II are granted; defendants' motions to strike allegedly immaterial allegations in the complaint are denied.

## I

■ Defendants have moved to strike plaintiff's request for punitive and psycho- logical damages. There has been much disagreement among the federal judiciary as to whether or not punitive damages and damages for pain and suffering are recoverable under ADEA. The provision which has spawned this controversy is 29 U.S.C. § 626(b), which reads in pertinent part:

> Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided*, That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action

1. The three defendants also moved to strike plaintiff's allegation of jurisdiction under 28 U.S.C. § 1343(3) because no state action was present. Plaintiff has no objection to such allegation being stricken (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (or Strike) at 16) and that Motion is granted.

In addition, defendants Faccio and Rowland moved to dismiss Count I against them for failure to state a claim upon which relief may be granted and lack of subject matter jurisdiction; plaintiff agrees that Count I is directed against plaintiff's corporate employer only. Plaintiff's Memorandum of Law at 13. However, plaintiff argues that the court should exercise "pendent party jurisdiction" over the individual defendants under Count II. Plaintiff's Memorandum of Law at 14–15. The court will decline to do so for two reasons. First, as discussed in Part II, *infra*, the pendent state claim of Count II is dismissed. Second, plaintiff's characterization of *Aldinger v. Howard*, 427 U.S. 1, 6–19, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) overstates the holding of that case. There the plaintiff sued several county officials and the county itself for her employment dismissal under § 1983 and a pendent state claim. The Court, having dismissed her claim against the county on the basis of *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), held that there could be no jurisdiction over the county under the doctrine of pendent party jurisdiction. The Court refused to extend the doctrine of pendent jurisdiction, crystallized in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), to confer jurisdiction over a party as to whom no independent basis of federal jurisdiction existed.

The situation with respect to the joining of a new party, however, strikes us as being both factually and legally different from the situation facing the Court in *Gibbs* and its predecessors. From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative fact." . . .

True, the same considerations of judicial economy would be served insofar as plaintiff's claims "are such that he would ordinarily be expected to try them all in one judicial proceeding . . . ." . . . But the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.

427 U.S. at 14–15, 96 S.Ct. at 2420.

While the Court refused to announce "any sweeping pronouncement" upon *Aldinger*'s application in cases not involving § 1983, *id.* at 18, 96 S.Ct. 2413, the Second Circuit has avoided the issue of pendent party jurisdiction following *Aldinger* on at least two occasions. *Morrissey v. Curran*, 567 F.2d 546, 549 n. 11 (2d Cir. 1977); *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841, 844 (2d Cir. 1977). This court's position is strengthened further by the Court's recent opinion in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), wherein the Court did not allow a plaintiff to assert a claim against a third-party defendant when there was no independent basis for federal jurisdiction over that claim. Accordingly, defendant Faccio and Rowland's motion to dismiss, under Counts I and II, is granted.

brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 216(b), part of the Fair Labor Standards Act [hereinafter FLSA], provides in relevant part, "Any employer who violates . . . this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." Therefore, the statutory framework of §§ 216(b) and 626(b) provides for double recovery in cases of wilful age discrimination.

Eight district courts have held that a plaintiff may receive punitive and/or psychological damages for ADEA violations. *Morton v. Sheboygan Memorial Hospital*, 458 F.Supp. 804, 807 (E.D.Wis.1978); *Kennedy v. Mountain States Telephone & Telegraph Co.*, 449 F.Supp. 1008, 1009–11 (D.Colo.1978); *Buchholz v. Symons Manufacturing Co.*, 445 F.Supp. 706, 713–14 (E.D. Wis.1978); *Walker v. Pettit Construction Co., Inc.*, 437 F.Supp. 730 (D.S.C.1977); *Coates v. National Cash Register*, 433 F.Supp. 655, 663–64 (W.D.Va.1977); *Bertrand v. Orkin Exterminating Co., Inc.*, 419 F.Supp. 1123, 1132–33 (N.D.Ill.1976), *aff'd on rehearing*, 432 F.Supp. 952 (N.D.Ill. 1977); *Murphy v. American Motors Sales Corp.*, 410 F.Supp. 1403, 1404–06 (N.D.Ga. 1976); *Combes v. Griffin Television, Inc.*, 421 F.Supp. 841 (W.D.Okl.1976).[2] These courts have relied upon the reasoning of the District Court for the District of New Jersey in *Rogers v. Exxon Research & Engineering Co.*, 404 F.Supp. 324, 327–33 (D.N.J. 1975), sometimes even after its reversal by

the Third Circuit, found at 550 F.2d 834, 839–42 (3d Cir. 1977). The district court in *Rogers* held:

"It is the Court's view that the ADEA essentially establishes a new statutory tort. Once liability is established under the statute, therefore, the panoply of usual tort remedies is available to recompense injured parties for all provable damages." 404 F.Supp. at 327. The court's theory was premised upon its belief that the primary goal of ADEA was to alleviate the psychological damage inflicted by age discrimination:

In measuring the wrong done and ascertaining the appropriate remedy here, the Court is aware that the most pernicious effect of age discrimination is not to the pocketbook, but to the victim's self-respect. . . . (T)he out-of-pocket loss occasioned by such discrimination is often negligible in comparison of the physiological and psychological damage caused by the employer's unlawful conduct. . . .

. . . . .

. . . It is difficult enough for anyone to encounter and to surmount the psychological and physiological problems of the aging process. Simultaneously to find oneself arbitrarily discharged because the clock has struck a certain hour adds substantially . . . to these already formidable stresses. The cumulative effect of an arbitrary and illegal termination of a useful and productive older employee is a cruel blow to the dignity and self-respect of one who has devoted his life to productive work, and can take a dramatic toll.

*Id.* at 329.

However, a greater number of federal courts have denied the recovery of damages for pain and suffering for ADEA actions; in fact, all four circuit courts of appeals which have ruled on this issue have so de-

---

**2.** Within this circuit, Judge Knapp stated, in dicta, "The Act was intended to alleviate the serious economic and *psychological suffering* of people between the ages of 40 and 65 caused by widespread job discrimination against

them." *Brennan v. Paragon Employment Agency, Inc.*, 356 F.Supp. 286, 288 (S.D.N.Y. 1973), *aff'd mem.*, 489 F.2d 752 (2d Cir. 1974) (emphasis added).

cided. *Slatin v. Stanford Research Institute,* 590 F.2d 1292 (4th Cir. 1979); *Vazquez v. Eastern Air Lines, Inc.,* 579 F.2d 107 (1st Cir. 1978); *Dean v. American Security Insurance Co.,* 559 F.2d 1036, 1038–39 (5th Cir. 1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834, 839–42 (3d Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978); *Riddle v. Getty Refining & Marketing Co.,* 460 F.Supp. 678 (N.D.Okl.1978); *Catlett v. Owens-Illinois, Inc.,* 454 F.Supp. 358, 365–67 (W.D.Mo.1978); *Ellis v. Philippine Airlines,* 443 F.Supp. 251 (N.D.Cal. 1977); *Jaeger v. American Cyanamid Co.,* 442 F.Supp. 1270, 1272–73 (E.D.Wis.1977); *Postemski v. Pratt & Whitney Aircraft,* 443 F.Supp. 101, 103 (D.Conn.1977); *Looney v. Commercial Union Assurance Companies,* 428 F.Supp. 533, 535–37 (E.D.Mich.1977); *Travers v. Corning Glass Works,* 76 F.R.D. 431, 435–36 (S.D.N.Y.1977); *Rechsteiner v. Madison Fund, Inc.,* 75 F.R.D. 499, 501 (D.Del.1977); *Platt v. Burroughs Corp.,* 424 F.Supp. 1329, 1335–38 (E.D.Pa.1976); *Sant v. Mack Trucks, Inc.,* 424 F.Supp. 621 (N.D. Cal.1976). *Cf. Schlicke v. Allen-Bradley Co.,* 448 F.Supp. 252 (E.D.Wis.1978) and *Dorsey v. Consolidated Broadcasting Corp.,* 432 F.Supp. 542 (E.D.Wis.1977) (plaintiff under ADEA not entitled to damages for harm to reputation). These courts in large part have relied upon the Third Circuit's analysis in the *Rogers* case. The Third Circuit's decision was based upon two grounds. First, the court held that the provision for liquidated damages under ADEA is the functional equivalent of punitive damages, "If the employer's conduct has been such to merit punitive treatment, then he is to be penalized by doubling the award." 550 F.2d at 840. Second, the court emphasized that private lawsuits are secondary to the administrative remedies developed in ADEA. The determination of damages for pain and suffering is "vague and amorphous," and thus would hamper resolution of age discrimination cases on an administrative level,

The introduction of a claim for psychic and emotional distress would present serious administrative problems. While the existence of such an item of damages might strengthen the claimant's bargaining position with the employer, it would also introduce an element of uncertainty which would impair the conciliation process. Haggling over an appropriate sum could become a three-sided conflict among the employer, the Secretary, and the claimant. . . .

The Act provides for determination of the amount of damages by an objective test—the amount of lost earnings. While the exact computation may be the subject of disagreement, that type of dispute is familiar to administrative proceedings and generally not difficult to resolve. *Id.* at 841.[3]

■ A similar result has been obtained with respect to punitive damages under ADEA. *Murphy v. American Motors Sales Corp.,* 570 F.2d 1226 (5th Cir. 1978); *Dean v. American Security Insurance Co., supra,* 559 F.2d at 1339–40; *Riddle v. Getty Refining & Marketing Co., supra; Ellis v. Philippine Airlines, supra; Fellows v. Medford*

---

**3.** The rationale of the First Circuit in *Vazquez* differed somewhat from that in *Rogers* and *Dean* in that the First Circuit doubted that the introduction of damages for pain and suffering would impair the likelihood of administrative conciliation:

> While we appreciate the concern expressed by both circuits in *Rogers* and *Dean*, we are not persuaded that a contrary result might not be as logically reached. If an employer realizes that the most it stands to lose in a private suit is lost wages, possibly doubled for a willful violation, we think it arguable that the employer might be less likely to compromise the claim short of a lawsuit.

579 F.2d at 111.

Moreover, the First Circuit cautioned that its holding was "a limited one," subject to change in the future:

> While we find that the statutory language, coupled with congressional purpose, indicates the correctness of limiting damages to those provided by the FLSA, we do not suggest permanently foreclosing remedies which might prove essential to guarantee the integrity of the statute. It may be at some future date it will be shown that without a damage remedy the purposes of the Act cannot be realized."

*Id.* at 112.

*Corp.*, 431 F.Supp. 199, 202 (D.Ore.1977); *Looney v. Commercial Union Assurance Co., supra*, 428 F.Supp. at 535–37; *Hannon v. Continental National Bank*, 427 F.Supp. 215, 217–18 (D.Colo.1977); *Platt v. Burroughs Corp., supra; Aaron v. Davis*, 414 F.Supp. 453, 463 (E.D.Ark.1976). As the *Fellows* court stated succinctly, "The liquidated damages provided by § 216(b) are available as an alternative to compensatory and punitive damages." 431 F.Supp. at 202.

The impact of the United States Supreme Court's opinion in *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), upon this issue is unresolved. The Court held, in construing the terms "legal or equitable relief" in 29 U.S.C. § 626(b), that a plaintiff is entitled to a jury trial under ADEA. The Court reasoned,

This inference is buttressed by an examination of the language Congress chose to describe the available remedies under the ADEA. Section 7(b), 29 U.S.C. § 626(b), empowers a court to grant "*legal* or equitable relief" and § 7(c), 29 U.S.C. § 626(c), authorizes individuals to bring actions for "*legal* or equitable relief" (emphases added). The word "legal" is a term of art: In cases in which legal relief is available and legal rights are determined, the Seventh Amendment provides a right to jury trial. . . . "[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary." . . . We can infer, therefore, that by providing specifically for "legal" relief, Congress knew the significance of the term "legal," and intended that there would be a jury trial on demand to "enforc(e) . . . liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation."

*Id.* at 583, 98 S.Ct. at 871 (citations omitted). The Court continued, in a footnote,

Section 7(b), 29 U.S.C. § 626(b), does not specify which of the listed categories of relief are legal and which are equita-

ble. However, since it is clear that judgments compelling "employment, reinstatement or promotion" are equitable, see 5 J. Moore, Federal Practice ¶ 38.21 (1977), Congress must have meant the phrase "legal relief" to refer to judgments "enforcing . . . liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation." *Id.* at 583 n. 11, 98 S.Ct. at 871.

The significance of the *Lorillard* decision is in dispute. In *Kennedy v. Mountain States Telephone & Telegraph Co., supra*, the district judge concluded that punitive damages are recoverable under ADEA because under *Lorillard*, the term "legal" remedy is given its commonlaw meaning and "[t]he award of punitive damages has been recognized and treated as a legal rather than equitable remedy." 449 F.Supp. at 1011. However, two courts have taken the opposite position. In denying damages under ADEA for emotional damage, the Fourth Circuit stated that the *Lorillard* decision

lends added strength to the finding that pain and suffering damages should not be allowed in ADEA actions. The Court reasoned that the specific and selective incorporation of FLSA enforcement provisions into the ADEA evidenced a Congressional intent to adopt existing interpretations of the provisions, thereby affording a right to a jury trial in ADEA actions. As the First Circuit noted in *Vazquez, supra*, 579 F.2d at 110, courts have consistently refused to grant FLSA litigants compensatory damages, other than those specifically enumerated in the Act. Following the Supreme Court's reasoning in *Lorillard*, one must assume that Congress intended ADEA remedies to be similarly limited.

*Slatin v. Stanford Research Institute, supra*, at 1296. The district court in *Riddle v. Getty Refining & Marketing Co., supra*, relied upon both the *Lorillard* opinion and a recent congressional report to hold that neither punitive damages nor damages for emotional distress may be recovered under ADEA. Public Law 95–256 was adopted in

response to the *Lorillard* decision pertaining to the right to a jury trial in ADEA cases.[4] The House Conference Report stated explicitly,

> The ADEA as amended by this act does not provide remedies of a punitive nature. The conferees therefore agree to permit a jury trial on the factual issues underlying a claim for liquidated damages because the Supreme Court has made clear that an award of liquidated damages under the FLSA is not a penalty but rather is available in order to provide full compensatory relief for losses that are "too obscure and difficult of proof for estimate other than by liquidated damages."

House Conference Report No. 95–950, 95th Cong., 2d Sess., reprinted in [1978] U.S. Code Cong. & Admin. News, pp. 504, 535. Thus the *Riddle* court concluded, "These recent developments provide a definitive resolution of the previous conflict between the courts on this question." 460 F.Supp. at 680.

The two cases within this circuit have denied recovery for punitive and emotional damages under ADEA. *Postemski v. Pratt & Whitney Aircraft, supra; Travers v. Corning Glass Works, supra.* This court agrees with *Slatin* and *Riddle* that the *Lorillard* opinion strengthens this position. Accordingly, defendants' motion to dismiss or strike the prayer for punitive and psychological damages under Count I is granted.

## II

■ Defendants also have moved to dismiss Count II, concerning defamation, for lack of pendent jurisdiction. The three requirements for pendent jurisdiction were outlined in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), as follows: (1) there must be a substantial federal claim; (2) the state and federal claims "must derive from a common nucleus of operative fact"; and

(3) the claims are such that the plaintiff would "ordinarily be expected to try them all in one judicial proceeding." A federal court's discretionary power to hear pendent state claims lies in "considerations of judicial economy, convenience and fairness to litigants." *Id.* at 726, 86 S.Ct. at 1139.

Several federal courts have allowed the maintenance of pendent state claims for defamation in conjunction with federal claims. *Colaizzi v. Walker*, 542 F.2d 969, 974 (7th Cir. 1976) (§ 1983 and defamation); *Murray v. Amoco Oil Co.*, 539 F.2d 1385, 1388 (5th Cir. 1976) (Consumer Credit Protection Act and libel); *Kletschka v. Driver*, 411 F.2d 436, 450 (2d Cir. 1969) (§ 1983 and defamation); *National Organization for Women v. Sperry Rand Corp.*, 457 F.Supp. 1338, 1349 (D.Conn.1978) (Title VII, § 1981, and defamation). However, two courts have dismissed pendent state claims for defamation. *PAAC v. Rizzo*, 502 F.2d 306, 313 (3d Cir. 1974), *cert. denied*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975) (Economic Opportunity Act of 1964 and defamation); *Hester v. Rizzo*, 454 F.Supp. 537, 548 (E.D. La.1978) (§ 1983 and defamation). In both cases the judges stressed that the relevant time periods for the allegedly defamatory statements and the alleged federal claims were different.

Only five cases have discussed pendent state jurisdiction with respect to actions under ADEA; unfortunately, none of the five involved defamation. The plaintiff in *Pandis v. Sikorsky Aircraft Division of United Technologies Corp.*, 431 F.Supp. 793, 795–96 (D.Conn.1977), filed suit claiming violation of ADEA and Conn.Gen.Stat. § 31–126(a), which prohibits discrimination in employment on account of age. Judge Newman declined pendent jurisdiction on the basis of 29 U.S.C. § 633(a), which provides that the "commencement of action under this chapter . . . shall supersede any State action." Judge Newman reasoned,

---

4. 29 U.S.C. § 626(c)(2) now reads in full:

    In an action brought under [this section], a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action.

The fact that the filing of a federal ADEA lawsuit supersedes and stays any action pending in a state forum is a persuasive indication that it would be inappropriate for a federal court considering a federal ADEA claim to assume pendent jurisdiction over a cause of action grounded in state law. Congress clearly did not intend that state and federal actions would proceed simultaneously after the conciliation period, and to allow a state law cause of action, whether based on diversity or pendent jurisdiction, to proceed in federal court would be inconsistent with the congressional intention that the federal remedy should take precedence.

*Id.* at 796.[5]

Two courts have approved the maintenance of state breach of contract claims with ADEA suits. In *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir. 1978), plaintiff first filed suit in the federal court in the Northern District of Ohio, claiming violations of ADEA. The district court dismissed because plaintiff's suit had been filed beyond the running of the statute of limitations; plaintiff did not appeal the dismissal. Plaintiff then filed suit for breach of contract in Michigan state court, whereupon defendant had the case removed to federal court in the Eastern District of Michigan under diversity jurisdiction. The Sixth Circuit affirmed the Michigan federal court's dismissal on the basis of *res judicata*:

Both the first and second suits seek to remedy a single wrong—the discharge of Cemer by Marathon. In view of the diversity of the parties, both the contract claim and the ADEA claim were within the original jurisdiction of the district

court in the first action and should have been brought together. The failure to join them bars the instant suit as the court below correctly held.

*Id.* (footnote omitted). The court noted, in dicta, "The Ohio district court would have been obligated to accept jurisdiction over the contract claim had it been joined in the first suit." *Id.* at 832 n. 2.

This issue was addressed directly by the district court in *Rechsteiner v. Madison Fund, Inc.*, 75 F.R.D. 499, 505–06 (D.Del. 1977), in which the plaintiff raised both ADEA and breach of contract claims. Here the court exercised its discretionary power to hear the pendent state claim because the same burden of proof would be borne by plaintiff and the same defenses would be raised by defendant under both claims.

■ However, on two occasions, federal courts have declined to accept pendent jurisdiction when the state claims affixed to the ADEA violation were tort claims for intentional infliction of emotional distress. In *Hannon v. Continental National Bank*, 427 F.Supp. 215, 218 (D.Colo.1977), the court had dismissed the plaintiffs' claims for punitive damages. The policy reason for dismissing an ADEA plaintiff's tort claim was as follows:

The issue of whether to accept jurisdiction of a state tort action for intentional infliction of emotional distress or loss of reputation in the community is discretionary with the court. . . . We decline to accept jurisdiction of such state causes of action in this case. Our adjudication of such state claims would circumvent the scope of the remedies available under the federal cause of action, and subvert the

---

**5.** Judge Newman also expressed concern whether or not the relevant Connecticut statute permitted a private right of action beyond an appeal from a final order of a hearing tribunal or from a dismissal of the complaint by the state commission. Without specifically stating so, Judge Newman in effect abstained from construing the Connecticut statute,

> While the state judiciary is free to read a private right of action prior to the appeal

stage into the state act if it chooses, it would be inappropriate for a federal court to reach out and take jurisdiction over a cause of action that can only succeed by giving the state statute an interpretation far different from the plain meaning of the words the state legislature used.

431 F.Supp. at 796.

policies of excluding damages for emotional distress under the ADEA.

*Id.*

The court in *Kennedy v. Mountain States Telephone & Telegraph Co.*, 449 F.Supp. 1008, 1011 (D.Colo.1978), reached the same result but for different reasons. There the court ruled that since punitive damages *are* recoverable under ADEA, plaintiffs' claims for mental distress could be remedied without resort to the state cause of action.

The reasoning of the *Hannon* opinion seems appropriate here. While far from identical, causes of action for defamation and for intentional infliction of emotional distress have several elements in common, the most distinctive being that remedies often are damages for loss of reputation, damages for injury to the psyche, and punitive damages. Allowing the state defamation claim to proceed would avail the plaintiff of remedies to which he would not be entitled under ADEA. Judge Blumenfeld's opinion in *National Organization for Women v. Sperry Rand Corp., supra*, lends support to this proposition. There the plaintiffs brought suit pursuant to Title VII and 42 U.S.C. § 1981 and added a state tort claim. Judge Blumenfeld allowed the state pendent claim, stating,

> Because the Court has already ruled that punitive damages are recoverable in the plaintiffs' § 1981 cause of action, this is not a case where the plaintiff is utilizing state law to obtain a remedy which would not be available under the federal law claim.

457 F.Supp. at 1349.

Furthermore, defendants correctly assert that the ADEA and the defamation claims concern different factual bases, for the ADEA claim would concentrate upon activity prior to and during plaintiff's termination, whereas the state defamation claim would focus upon post-termination events.

Therefore, in light of the *Hannon* and *NOW* decisions, and the different factual proof required, this court finds that it is not proper for a federal district court to exercise its judicial discretion to entertain a pendent state claim for defamation in conjunction with a suit brought pursuant to ADEA. Accordingly, defendants' motion to dismiss Count II is granted. The action against the individual defendants is dismissed as well.[6]

### III

Lastly, defendants move, pursuant to Rule 12(f), to strike certain allegations from the complaint which are allegedly redundant, immaterial, and impertinent, in particular, paragraphs 9–13, which recount plaintiff's transfer to the "needle plant" prior to his termination and the events comprising the defamation claim. However, these allegations, while not dispositive of the ADEA claim, may have some relevance to the jury's decision to award liquidated damages under 29 U.S.C. § 626(b), if liability is found. Accordingly, defendants' motion to strike these paragraphs is denied.

SO ORDERED.