## CHRISTOPHER J. THOMAS v. CATAWBA COLLEGE.

### (Filed 30 June, 1958.)

**1. Master and Servant § 6f—**

The measure of damages for wrongful discharge is the actual damage sustained on account of breach of the contract of employment by such wrongful discharge, which is the difference between the agreed compensation and the amount the employee earns or by reasonable effort could earn during the contract period.

**2. Same**

Where the contract of employment provides for payment of salary for one year subsequent to discharge for cause, such employee is entitled to such terminal pay, and, in addition thereto, any amount he earns from other employment during that year.

**3. Same—**

Where the contract of employment provides for payment of salary for one year after dismissal for cause, a discharged employee must elect whether he will maintain that the discharge was in violation of the contract of employment and sue for the resulting damages, or whether he will treat the discharge as a termination of employment for cause under the contract, in which event he is entitled to the terminal pay thereunder, and when, with knowledge, he accepts his salary checks for the year after notification of dismissal, he acquiesces in the employer's contention that the dismissal was for cause under the contract and may not thereafter maintain an action for wrongful discharge.

**4. Election of Remedies § 1—**

Where there are inconsistent rights or remedies available to a party, his choice of the one is an election not to pursue the other.

APPEAL by plaintiff from *Williams, J.,* September Civil Term, 1957, of ORANGE.

Civil action to recover damages for alleged wrongful discharge.

On former appeal, *Thomas v. College Trustees,* 242 N.C. 504, 87 S.E. 2d 913, the decision related solely to a motion by plaintiff for leave to inspect certain documents.

Defendant is a nonprofit educational corporation. The Synod of the Evangelical and Reformed Church elects the members of the Board of Trustees, defendant's governing body. Defendant operates Catawba College, located in or near Salisbury, North Carolina, a coeducational college promoted and supported by said religious denomination.

Plaintiff's employment as a member of the faculty of Catawba College, to wit, Professor of Music, was terminated as of February 23, 1952, by action of the Board of Trustees. Plaintiff was first employed in this capacity for the academic year 1943-1944. Under successive annual contracts, he was so employed each academic year thereafter. At

the time his employment was terminated, his contract for the academic year 1951-1952 was in effect.

While the 1951-1952 contract related specifically to that academic year, plaintiff's status, in respect of his right to permanent or continuous employment, was defined in defendant's tenure policy.

Defendant's bylaws provided:

"Academic tenure of members of the faculty shall be governed by the principles outlined in the Statement of Tenure as drafted and adopted by the Association of American University Professors and subsequently approved by the Association of American Colleges."

The statement of tenure referred to in defendant's bylaws provided:

"(a) After the expiration of a probationary period teachers or investigators should have permanent or continuous tenure, and their services should be terminated only for adequate cause, except in the case of retirement for age, or under extraordinary circumstances because of financial exigencies.

"In the interpretation of this principle it is understood that the following represents acceptable academic practice:

" . . .

"(4) Termination for cause of continuous appointment, or the dismissal for cause of a teacher previous to the expiration of a term appointment should, if possible, be considered by both a faculty committee and the governing board of the institution. In all cases where the facts are in dispute, the accused teacher should be informed before the hearing in writing of the charges against him and should have the opportunity to be heard in his own defense by all bodies that pass judgment upon his case. He should be permitted to have with him an adviser of his own choosing who may act as counsel. There should be a full stenographic record of the hearing available to the parties concerned. In the hearing of charges of incompetence the testimony should include that of teachers and other scholars, either from his own or from other institutions. Teachers on continuous appointment who are dismissed for reasons not involving moral turpitude should receive their salaries for at least a year from the date of notification of dismissal whether or not they are continued in their duties at the institution."

Plaintiff's contract contained this provision:

"*ESPRIT DE CORPS.* Party of the second part (plaintiff) agrees to support the general objectives of Catawba College, to give primary consideration to the intellectual, moral, and spiritual development of the students; to support the administration; and together, faculty and students, to build an esprit de corps second to none."

The Board of Trustees by letter of January 25, 1952, notified

plaintiff that charges against him had been made to the Board of
Trustees, wherein it was charged that plaintiff had breached his con-
tract with Catawba College, particularly the paragraph quoted above,
and specifically that plaintiff (a) had been disloyal to the administra-
tion of Catawba College, (b) had made slanderous statements to
students, faculty members and others reflecting upon the institution
itself and officials thereof, and (c) that he had made consistent ef-
forts among students and faculty members to incite unrest, suspicion
and lack of confidence in the institution, its Board of Trustees, and
its administration, thereby damaging the. college's good name and
defaming the character of certain of its officers.

The said notice to plaintiff contained this paragraph:

"In accordance with the rule of tenure previously adopted by the
Board of Trustees, a hearing has been set for Thursday, February 7,
1952, at 10:00 A.M. at the Yadkin Hotel, at which time evidence
with respect to the above charges will be heard by a body composed
of members of the trustees and faculty who will sit in judgment on
your case and thereafter render their decision. In this session you will
have the opportunity to testify in your own behalf and will be per-
mitted to have with you an adviser of your own choosing who may
act as your counsel. A full stenographic record of the entire proceed-
ings will be kept."

A hearing committee of ten members was constituted. It consisted
of the Chairman of the Board of Trustees, and four other Trustees
and five faculty members, appointed by said Chairman.

The hearing on February 7, 1952, was conducted in accordance with
the North Carolina practice and procedure in a judicial hearing. Judge
Wilson Warlick, one of the members from the Board of Trustees, pre-
sided. Evidence was offered in support of the charges and by Dr. Tho-
mas (plaintiff) in support of his denial thereof. Stahle Linn, Esq., as
counsel for Catawba College, and Clarence Kluttz, Esq., as counsel for
Dr. Thomas, examined and cross-examined the witnesses.

The committee's report is dated February 15, 1952. (Note: The
committee, at said hearing, heard charges against Dr. Thomas, Mrs.
Thomas and Dr. Hadley; and its report related to these three indi-
viduals.) After reciting the events preceding the hearing and the pro-
cedure followed, and after quoting the charges (set out above), the
report contained these findings:

"After hearing all of the evidence and argument based thereon,
your committee, following a full discussion, returns as their individual
and collective findings of fact, 'That each charge is sustained against
each individual named,' in that each individual named therein, John
C. Hadley, Christopher J. Thomas and Mrs. Christopher J. Thomas.

"Severally breached the contract entered into with Catawba College as is embraced in the first charge.

"2. That each individual charged, likewise from the evidence, showed a disloyalty to the administration of Catawba College.

"3. That each individual charged made slanderous statements to students, faculty members, and others as appears in the evidence, reflecting upon the institution and the officials thereof.

"4. That each individual made many consistent efforts among students and faculty members to incite unrest, suspicion and lack of confidence in the institution, its Board of Trustees, and its administration, damaging thereby the good name of the College and defaming the character of certain of its officials, all of which is reflected by the vote of the individuals comprising the Hearing Commission."

Nine members of the committee, to wit, the five from the Board of Trustees and four of the members from the faculty, voted in favor of the report. One member from the faculty voted *contra.*

The committee attached to its report a stenographic report of the entire proceeding, including the evidence, as reported by the official court reporter for the United States District Court for the Western District of North Carolina.

A copy of the committee's said report, including a transcript of the proceeding, was forwarded to Dr. Thomas by the Secretary of the Board of Trustees with his letter of February 15, 1952, a copy of which was sent to Mr. Kluttz. This is an excerpt from said letter: "The original of this report will be duly filed with the Board of Trustees of Catawba College at its regular meeting on February 19, 1952, at the college. In the event that you should wish to be heard on this matter before the Board of Trustees, you should appear before said Board at 2:00 o'clock P.M. on February 19, 1952, at the time of its regular meeting."

Although notified of his right and opportunity to appear before the Board of Trustees and be heard in opposition to the charges and to the committee's report, plaintiff, after consultation with his counsel, did not appear either personally or by counsel.

By letter of February 20, 1952, the Board of Trustees advised Dr. Thomas of the action taken at its meeting on February 19, 1952, quoting this excerpt from the minutes: "The Board of Trustees of Catawba College received and thoroughly discussed the report of the Hearing Committee. A unanimous vote sustains the charges preferred against Christopher J. Thomas, Professor of Music, and hereby terminates his services with Catawba College as of February 23, 1952. *Further, as provided in the tenure policy of the college his salary shall be continued for one year from date of this notice. Payments*

*thereunder are to be made in accordance with the standard pay schedule of the college.*" (Our italics)

Plaintiff's employment wâs terminated as of February 23, 1952. Thereafter, he had no connection with Catawba College.

Plaintiff instituted this action on July 16, 1954. Meanwhile, defendant issued to plaintiff, as directed by its Board of Trustees, and plaintiff received, endorsed and accepted, checks aggregating $4,175.00, plaintiff's salary for the year following notification of dismissal. The last of these salary payments, a check for $289.52, bearing the notation "FINAL PAYMENT," was issued February 21, 1953.

Plaintiff's allegations, apart from allegations referred to in the opinion, may be summarized as follows:

1. Prior to the hearing on February 7, 1952, Mr. Linn refused Mr. Kluttz's request that the charges be made more definite and specific; and plaintiff learned for the first time "the alleged conduct of the plaintiff relied upon as grounds for his dismissal" when evidence was introduced at the hearing.

2. The evidence offered at the hearing as to plaintiff's statements and conduct did not support the charges made against him, for that the statements attributed to him and relied upon as grounds for discharge (1) were true, (2) were privileged, whether true or false, and (3) were uttered in good faith upon information deemed reliable, whether true or false.

3. The academic members of the hearing committee "were biased against him and determined to vote for his dismissal regardless of his innocence because of fear of reprisals against them" by A. R. Keppel, President of Catawba College; the hearing committee refused to allow plaintiff an opportunity to show "their lack of impartiality"; and "the Trustee members of the Committee were motivated solely by one thought: to render a decision which would best serve the interests of the college and, rightly or wrongly, felt that as between the plaintiff and its President the welfare of the College required that the plaintiff be discharged, regardless of fault."

4. His discharge was without adequate cause, was not for age, and was not for financial exigencies, but was in breach of defendant's contract with plaintiff.

Plaintiff prayed (1) "that for purposes of this and subsequent suits between the parties for accrued salary, the discharge of the plaintiff be adjudged wrongful," (2) that he recover all unpaid salary to date of trial, (3) that he recover punitive damages in the amount of $50,000.00, and (4) that he recover costs.

Answering, defendant alleged, in summary, that plaintiff's discharge was for adequate cause, in good faith, and after hearings in

strict compliance with paragraph (a) (4) of the statement of tenure; and that plaintiff was estopped to maintain this action for alleged wrongful discharge by his acceptance of his salary for the year following his dismissal.

At the conclusion of plaintiff's evidence, the court, allowing defendant's motion therefor, entered judgment of involuntary nonsuit and dismissed the action. Plaintiff excepted and appealed, assigning errors.

*Barnie P. Jones and W. R. Dalton, Jr., for plaintiff, appellant.*

*McLendon, Brim, Holderness & Brooks, C. T. Leonard, Jr., and Linn & Linn for defendant, appellee.*

BOBBITT, J. No evidence was offered to support plaintiff's further allegations that defendant, after plaintiff's discharge, made statements, false, wilful, malicious or otherwise, to prospective employers of plaintiff, and thereby interfered with plaintiff's efforts to obtain other employment; and no evidence was offered to support plaintiff's allegations that the Board of Trustees acted "maliciously, tortiously and wilfully" to carry out a preconceived and deliberate scheme to ruin plaintiff. Indeed, a witness for plaintiff testified that each member of the Board of Trustees was "a man of outstanding reputation and character" and undertook to serve the college in the capacity of Trustee "with absolute faithfulness and honesty" and in obedience to what he conceived to be his conscientious duty. Without further comment we pass from these unsupported allegations of the complaint.

The Board of Trustees terminated plaintiff's employment as of February 23, 1952. Conceding the *power* of the Board of Trustees to discharge him, thus severing his connection with Catawba College, plaintiff denies the *right* of the Board of Trustees to discharge him otherwise than for "adequate cause." He contends that "adequate cause" for his discharge did not exist. Hence, he contends he was discharged wrongfully.

Consideration of the record leaves the impression that the proceedings before the hearing committee and Board of Trustees were in good faith and in substantial compliance with paragraph (a) (4) of the tenure policy. However, the basis of decision, stated below, renders unnecessary the discussion or decision of questions raised as to whether the action of the Board of Trustees *when rendered* was a final determination that plaintiff's dismissal was for "adequate cause."

Plaintiff had full notice and knowledge that his dismissal was based on the determination by the hearing committee and the Board of Trustees that "adequate cause" for his dismissal existed. Moreover, he had full notice and knowledge that the resolution of the Board of

Trustees, quoted in the notification of dismissal, contained this provision: "Further, as provided in the tenure policy of the college his salary shall be continued for one year from date of this notice. Payments thereunder are to be made in accordance with the standard pay schedule of the college." Thus, he was advised plainly that the $4,175.00 paid to him during the year following notification of dismissal was paid to him *as salary*.

Obviously, the provision in paragraph (a) (4) of the tenure policy, regarding payment of salary for one year following notification of dismissal, is applicable only when "adequate cause" for dismissal has been determined after proceedings conducted in accordance with its terms; and, in such case, the payment of the discharged employee's salary for one year is both the measure and *the limit* of defendant's obligation. It does not bear upon the respective rights of the parties in case of wrongful discharge in breach of contract. In the latter case the discharged employee's remedy is an action to recover damages for defendant's breach of contract.

The wrongful discharge of plaintiff by defendant, if such occurred, would constitute a breach of defendant's contract with plaintiff and give rise to a cause of action in favor of plaintiff and against defendant; but in such action the measure of the damages recoverable would be the actual loss or damage sustained on account of the breach. The maximum amount recoverable would be the difference, if any, between the agreed compensation and the amount plaintiff earned or by reasonable effort could earn during the contract period. *Smith v. Lumber Co.*, 142 N.C. 26, 54 S.E. 788; *Currier v. Lumber Co.*, 150 N.C. 694, 64 S.E. 763; *Croom v. Lumber Co.*, 182 N.C. 217, 108 S.E. 735; *Construction Co. v. Wright*, 189 N.C. 456, 127 S.E. 580; *Hall v. Trust Co.*, 200 N.C. 734, 158 S.E. 388; *Robinson v. McAlhaney*, 216 N.C. 674, 6 S.E. 2d 517; 35 Am. Jur., Master and Servant Secs. 54 and 57; 56 C.J.S., Master and Servant Sec. 59.

Thus, if plaintiff elected to acquiesce in his dismissal by the Board of Trustees, as expressed in its resolution, he was entitled thereunder to salary payments aggregating $4,175.00 for the year following notification of his dismissal and, *in addition*, was entitled to whatever he earned from other employment during that year. On the other hand, if plaintiff elected to treat his dismissal as wrongful and sue for damages for breach of contract, and obtained other employment in which he earned compensation equal to or in excess of his compensation as a member of the faculty of Catawba College, his recovery would be limited to nominal damages.

If plaintiff were wrongfully discharged, he could elect to pursue either course but not both; for his rights and remedies under the al-.

ternatives available to him were essentially different and inconsistent.

"The whole doctrine of election is based on the theory that there are inconsistent rights or remedies of which a party may avail himself, and a choice of one is held to be an election not to pursue the other." Quoted by *Hoke, J.* (later C.J.), in *Machine Co. v. Owings*, 140 N.C. 503, 53 S.E. 345, this statement expresses succinctly the well established rule in this jurisdiction. *Surratt v. Insurance Agency*, 244 N.C. 121, 93 S.E. 2d 72, and cases cited.

Plaintiff made his election when he accepted, endorsed and collected the salary checks aggregating $4,175.00, paid as directed by the resolution of the Board of Trustees, for the year following notification of his dismissal. The law will not permit him now to assert different rights or pursue a different remedy. Perhaps, when he made his election, his impression was that he could and would earn equal or greater compensation in other employment. Be that as it may, having made his election, whether he earned more or less than $4,175.00 from other employment during the year following notification of his dismissal has no bearing upon his right to maintain this action for alleged wrongful discharge.

Having reached the conclusion that plaintiff's said election constitutes a complete bar to his right to maintain this action, the judgment of nonsuit is affirmed.

Affirmed.