LEWIS R. BRIGGS v. AMERICAN & EFIRD MILLS, INC.

(Filed 14 January, 1960.)

1. Contracts § 12—

When a written contract is free from ambiguity, interpretation is for the court.

2. Same—

In interpreting a contract, the court will ascertain the intent from the language used, the situation of the parties, and the objective sought to be accomplished.

3. Same—

Ordinarily the words employed in a written contract will be given their ordinary significance.

4. Master and Servant § 10— Facts alleged in the complaint held insufficient to show breach of contract of employment by employer.

The contract of employment for a term of three years provided that the employee should have exclusive charge of the employer's manufacturing operations. The contract provided that the employer might terminate the contract at any time for fraud or dishonesty of the employee but that upon physical incapacity of the employee his remuneration should continue for one year and in the event of discharge because of disagreement with the employee's policies or methods, or sale of its properties by the employer, or any other cause, the employee's remuneration should continue for a minimum of two years. Shortly before the expiration of the three-year term the employer placed another in complete charge of one of its manufacturing divisions, which was a mere segment of its extensive operations. *Held*, although a termination of the employee's contract for asserted incompetency or insubordination would obligate the employer to pay his compensation for two years thereafter, the placing of another in complete charge of one segment of its manufacturing business does not constitute a breach of the contract, there being no suggestion that the employee had been removed from supervision and control of the other divisions of the employer's business.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Sharp, S. J.*, April 6, 1959 Extra Civil Term, of MECKLENBURG.

This action was begun 29 May 1958. The amended complaint alleges a contract of employment made 24 August 1955. A copy of the contract is annexed to the complaint. It provides for plaintiffs employment for a term of three years beginning 1 October 1955, and further provides: "Briggs shall be in exclusive charge of the manufacturing operations of American and Efird. He shall devote his full time and effort to this work. He shall report and be responsible to the Executive Vice-President of American and Efird. His title shall be that of Vice-President and Director of Manufacturing." As compen-

sation for the services to be rendered, defendant agreed to pay an annual salary of $24,000 and certain other perquisites specified in the contract.

The contract contained these further provisions: "For any fraud or dishonesty on the part of Briggs, American and Efird may terminate this contract at any time. In the event of physical incapacity on the part of Briggs, American and Efird shall nevertheless maintain its performance under this contract throughout one year of such incapacity. Thereafter, if such incapacity continues, American and Efird may cancel this contract.

"If for any other reason, whether because of disagreement with his policies and methods or sale of its properties or other cause, American and Efird terminates Briggs' services during the term of this contract, then American and Efird shall be liable to Briggs for compensation of a minimum of two years base pay."

The complaint alleges that plaintiff was an experienced executive, able to supervise the manufacturing operations of large textile mills, and because of this the parties expressly stipulated that Briggs should serve in the capacity of being in exclusive charge of the manufacturing operations and did not contemplate or provide that he should serve in any less capacity. He alleges that he served pursuant to the contract until 2 April 1958, "at which time, against the wishes and over the protests of the plaintiff, the defendant through its Executive Vice President promulgated an order designating another person General Manager of its Spun Fibers Division, placing such person in complete charge of said Division, and relieving the plaintiff of his duties and responsibilities with respect to manufacturing in the Spun Fibers Division.

"4. The said Spun Fibers Division was a manufacturing operation of the defendant corporation, producing worsted yarns, synthetic yarns and blends of synthetic and worsted yarns."

He alleges a termination of the contract by placing another person in charge of the Spun Fibers Division, entitling him to $48,000, two years' minimum base pay, as stipulated in the contract.

Defendant moved to strike from the complaint the allegations as to the motives inducing the parties to enter into the contract. The motion was allowed and defendant then demurred to the complaint for failure to state a cause of action. The demurrer was sustained. Plaintiff, having excepted to the order striking portions of the complaint and to the judgment, appealed.

*Carpenter & Webb for plaintiff, appellant.*
*Helms, Mulliss, McMillan & Johnston for defendant, appellee.*

RODMAN, J. The question presented is this: Did the placing of another person in charge of defendant's Spun Fibers Division terminate Briggs' service with defendant?

The answer is to be found in the contract. When a contract is in writing and free from ambiguity, interpretation is for the court. "When competent parties contract at arm's length upon a lawful subject, as to them the contract is the law of their case." *Suits v. Insurance Co.,* 249 N.C. 383, 106 S.E. 2d 579; *Barham v. Davenport,* 247 N.C. 575, 101 S.E. 2d 367.

When a court is called upon to interpret, it seeks to ascertain the intent of the parties at the moment of execution. To ascertain this intent, the court looks to the laguage used, the situation of the parties, and objects to be accomplished. Presumably the words which the parties select were deliberately chosen and are to be given their ordinary significance. *Casualty Co. v. Teer Co.,* 250 N.C. 547; *DeBruhl v. Highway,* 245 N.C. 139, 92 S.E. 2d 553; *Chambers v. Byers,* 214 N.C. 373, 199 S.E. 398; *Gilbert v. Shingle Co.,* 167 N.C. 286, 83 S.E. 337.

We examine the contract and allegations in the complaint in the light of these controlling rules. When we do so, it appears: Defendant's manufacturing operations are extensive; the Spun Fibers Division is a segment thereof; to supervise and direct its manufacturing operations, it desired a capable and experienced person; and to obtain such services defendant agreed to pay substantial compensation; each party regarded a fixed term for a number of years as best suited to accomplish the object of the contract, which was manifestly efficient and economical production of goods.

The parties recognized that conditions might arise which would cause a termination of the contract and cessation of plaintiff's services. If this cessation of services was due to plaintiff's physical disability, defendant obligated itself to "maintain its performance under this contract throughout one year of such incapacity"; if the termination of plaintiff's services was due to his intentional wrong (fraud or dishonesty) no obligation rested on defendant to make payment; if, however, the company terminated Briggs' services (1) by a sale of its properties, or (2) because of "disagreement with his policies and methods," or (3) for any other cause, the company obligated itself to pay the employee two years' salary, and this irrespective of the time when the contract was terminated.

Without these provisions the company would not be obligated to pay when the employee was physically unable to serve; but in the event of a sale of its properties, it would be obligated to the employee for the agreed compensation for the remainder of his term, *Woodley*

*v. Bond,* 66 N.C. 396, less what he could reasonably earn by other employment, *Thomas v. College,* 248 N.C. 609, 104 S.E. 2d 175; *Smith v. Lumber Co.,* 142 N.C. 26.

The parties desired to guard against a situation where the termination was based on asserted incompetency or insubordination (disagreement with his policies and methods.) Such a charge, if founded in fact, would, except for the contract provisions, relieve the employer of any obligation to pay. *Ivey v. Cotton Mills,* 143 N.C. 189. When the contract is read as a whole, it is, we think, apparent that the word "terminate" means "to put an end to, to make to cease, to end," Webster's New Int. Dic., and should be given its ordinary significance. The contract provides for payment upon termination of service. This means, we think, a complete termination and not a mere concentration of the area of service.

Plaintiff does not allege that the company has in fact ceased to use his services or that he is no longer in charge of a material part of its manufacturing operations. There is no allegation that he has been removed from all supervision and control. Manifestly, the parties contemplated that the employer should have the right to use the employee's services in its manufacturing operations to its advantage. A concentration of his talents in other manufacturing divisions so as to maintain efficient production would not, we think, be a breach of the contract, but, to the contrary would accomplish the purpose for which it was made—economical production of goods.

Plaintiff's allegation that the company terminated the employment by placing another in charge of the Spun Fibers Division is but a conclusion. It is not a statement of fact, and we think a conclusion based upon an erroneous interpretation of the contract. The facts alleged in the complaint differ materially from the situation described in *Mair v. Southern Minnesota Broadcasting Co.,* 4 A.L.R. 2d 273, and like cases on which plaintiff relies. In those cases there was in fact such a complete change in duties as to amount to a total cessation of the services contracted for.

The judgment sustaining the demurrer is
Affirmed.

HIGGINS, J., took no part in the consideration or decision of this case.