Aaron P. SANDERS, Plaintiff,

v.

DUKE UNIVERSITY, et al., Defendants.

No. C–81–216–D.

United States District Court,
M. D. North Carolina,
Durham Division.

May 14, 1982.

Jonathan Wallas and James C. Fuller, Jr., Charlotte, N. C., for plaintiff.

E. K. Powe, Durham, N. C., for defendants.

## MEMORANDUM OPINION

ERWIN, District Judge.

This case has come before the court upon the defendants' motion to dismiss, or in the alternative, motion for partial summary judgment. The plaintiff is a tenured professor at Duke University Medical Center (DUMC). He alleges that defendants Duke University and DUMC violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (ADEA). The plaintiff is chairman of the Division of Radiobiology, a division within DUMC's Department of Radiology. The plaintiff was fifty-six years old when he filed a charge with the Equal Employment Opportunity Commission (EEOC). He alleges in addition a pendent claim arising under North Carolina contract law.

## I. ADEA CLAIM

The gravamen of the plaintiff's ADEA complaint is that he was denied routine salary adjustments in the years 1977, 1978, 1979, and 1980; that he has been denied and is being denied secretarial assistance and fringe benefits routinely given to members of the Department of Radiology under age forty; and that he has been forced to endure derogatory statements, correspondence, and personal comments because of his age.

### A. *Filing of the Charge*

The plaintiff filed his charge of discrimination with the EEOC on December 23, 1980. The ADEA provides that the discriminatory acts must have occurred within 180 days preceding the filing of the charge. 29 U.S.C. § 626(d) (Supp.1981).

The defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for partial summary judgment under Fed.R.Civ.P. 56(a), is based on their contention that the allegedly discriminatory events occurred before June 25, 1980—180 days prior to the filing of the charge. The plaintiff has responded that even if the claims are time-barred, the court should nevertheless consider them under the doctrines of "equitable tolling" and "continuing violation."

### B. *Equitable Tolling*

The plaintiff argues that even if the alleged discriminatory acts occurred prior to the 180 day period, they remain actionable under the doctrine of "equitable tolling."[1] Essentially, the plaintiff contends that the court should modify the 180 day period, first, because he relied on defendants' alleged representations that he would be "treated fairly" and, second, because he believed that his complaint would be satisfactorily resolved through in-house university procedures.

In support of his first argument, the plaintiff relies on *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584 (5th Cir. 1981). In *Coke*, the plaintiff was the general manager of the employer's Dallas, Texas office. After being demoted to the position of adjuster, he asked an officer of one of the employer's largest clients to intercede on his behalf to obtain reinstatement. The client was assured by defendant on several occasions that the plaintiff would be reinstated, and the client conveyed these assurances to the plaintiff. 640 F.2d 586. Relying on these representations, the plaintiff belatedly filed his EEOC charge. *Id.* at 586–87.

The facts in *Coke* are distinguishable from those in this case. According to Dr. Sanders' own affidavits, he was promised only that he would be treated fairly, not that he would get total relief, as promised to the *Coke* plaintiff. Certainly implicit in a promise of "fair treatment" is the possibility that Dr. Sanders would not be satisfied with the final result. Rather, reliance upon a representation of "fair treatment" is more closely analogous to reliance upon a grievance procedure or other dispute resolution mechanism than upon the situation described in *Coke*. The plaintiff has not alleged that the statements made to him misrepresented the defendants' position. Thus, the court does not find the *Coke* rationale to be applicable here.

The plaintiff also contends that he did not file an earlier charge because he believed that his complaint would be satisfied through Duke's in-house grievance procedures. The pendency of an in-house grievance, however, will not toll the running of the statute of limitations period. In *International Union of Electrical Radio & Machine Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), the Supreme Court held that the period for filing a claim with the EEOC under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, is not tolled during the pendency of union grievance procedures. More recently, the Court applied this reasoning to a Title VII claim involving

---

1. The plaintiff appears to have confused the similar doctrines of equitable tolling and equitable estoppel. The former focuses on the plaintiff's ignorance of the limitation period; the latter focuses on the actions of the defendant. *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981).

a college faculty member. In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), a professor, having been denied tenure, filed a complaint with the college's grievance committee. The Court rejected the suggestion that the pendency of the grievance should toll the running of the Title VII limitations period:

> [W]e have already held that the pendency of a grievance, or some other method of collateral review, does not toll the running of limitations periods . . . . The existence of careful procedures to assure fairness in the tenure decisions should not obscure the principle that limitations periods normally commence when the employer's decision is made.

*Id.* at 261, 101 S.Ct. at 506 (citations and footnote omitted). *See also Wagner v. Sperry Univac*, 458 F.Supp. 505, 516 (E.D. Pa.1978), *aff'd*, 624 F.2d 1092 (3rd Cir. 1980) ("[a] litigant may not . . . avoid the statute of limitations simply because the decision it forces him to make—whether to pursue legal remedies before all avenues of informal settlement are exhausted—is a difficult one"); *Mayor v. Western Electric Co.*, 487 F.Supp. 84, 87 (W.D.Mo.1980) (equitable modification not justified on the sole ground that plaintiff, "presented with a difficult decision [,] . . . chose not to follow the avenue provided by the Age Discrimination in Employment Act. That Act provides legal remedies only within its statutory framework").

The plaintiff has not demonstrated any reason why the 180-day period should be equitably modified,[2] either because of statements allegedly made to him by representatives of defendants or because of the pendency of his internal grievance.

### C. *Continuing Violations*

 The plaintiff also argues that even if the allegedly discriminatory acts occurred before June 25, 1980, they were "continuing in nature." The court does not find this argument to be persuasive.

In *Evans v. United Airlines*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the Supreme Court pointed out that a past discriminatory act may have a continuing impact on such things as pay and fringe benefits: "But the emphasis should not be placed on mere continuity; the critical question is whether any present violation exists." *Id.* at 558, 97 S.Ct. at 1889. Thus, current effects, without a present act of discrimination, do not constitute a continuing violation. *Accord, Delaware State College v. Ricks, supra; Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014 (1st Cir. 1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980); *Lockhart v. Firestone Tire & Rubber Co.*, 454 F.Supp. 191 (E.D.Va.1978); *Platt v. Burroughs Corp.*, 424 F.Supp. 1329, 1334 (E.D.Pa.1976).

The Fourth Circuit's view of *Evans* and of the concept of continuing violations was articulated in an *en banc* decision in *Patterson v. American Tobacco Company*, 634 F.2d 744, 751 (4th Cir. 1980). In *Patterson*, the court found that promotional policies previously adopted constituted a continuing practice of discrimination that locked black and women employees into less favorable job positions. It is clear that the court was distinguishing a continuing policy or systematic practice from discrete decisions and their continuing effects. Similarly, the cases cited by plaintiff, *Jenkins v. Home Insurance Co.*, 635 F.2d 310, 312 (4th Cir. 1980), and *Kim v. Coppin State College*, 662 F.2d 1055 (4th Cir. 1981), involved ongoing discriminatory practices, rather than discrete, insular events.

In this case, Dr. Sanders attacks the discrete specific decisions of his supervisors. Each of the allegations in his complaint resulted from a definite decision made and communicated to him at a particular time.

---

**2.** It should also be noted that courts have refused to modify the 180-day requirement for plaintiffs who were represented by counsel during the filing period. *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1200 n.8 (5th Cir. 1975); *Downie v. Electric Boat Division*, 504 F.Supp. 1082, 1086 (D.Conn.1980). In this case, it is undisputed that the plaintiff has been represented by counsel since November 1979, a full year before he filed his EEOC charge.

Significantly, Dr. Sanders does not attack any particular policy or practice of the university, i.e., the manner in which annual salary adjustments are determined. Rather, the plaintiff directs his complaint to certain specific decisions and their present effects. As such, the facts before this court fall squarely within the dictates of *Delaware State College v. Ricks, supra,* and *Chardon v. Fernadez,* —— U.S. ——, ——, 102 S.Ct. 28, 29, 70 L.Ed.2d 6, 9 (1981), wherein the Supreme Court held that "the proper focus is on the *discriminatory acts,* not at the point at which the *consequences* of the acts become painful." *Id.* (quoting 449 U.S. at 258, 101 S.Ct. at 504 (emphasis in original)). In sum, the plaintiff has not established the presence of continuing violations.

### D. *Allegations of Discrimination*

#### 1. *Secretarial Assistance*

■ The plaintiff alleges that he has been denied secretarial assistance "routinely given to [Radiology] Department members under age 40." Amended Complaint at ¶ 8(B) (Am.Cplt.). According to the uncontradicted affidavit of Dr. Charles Putman, chairman of the Department of Radiology (and the plaintiff's immediate supervisor), there have been no changes in secretarial assignments in the Radiobiology Division since 1979. Accordingly, the defendants' motion is granted with respect to the plaintiff's allegations concerning secretarial assistance since they occurred prior to the ADEA's 180 day limitations period.

#### 2. *Fringe Benefits*

The plaintiff alleges that he has been denied "fringe benefits such as payment for travel and professional dues generally available to Department members under age 40." Am.Cplt. at ¶ 8(C). According to Dr. Putman's uncontradicted affidavit, in July of 1978, he informed all the faculty members of the Radiobiology Division, including the plaintiff, that academic enrichment funds could not be used to finance attendance at professional meetings or pay dues to professional societies without Dr. Putman's specific approval. On May 2, 1980, this policy was rescinded for the plaintiff, and since that time, Dr. Sanders has had the same access to funds for travel, professional dues, and related matters as he had prior to July 1978. Thus, the defendants' motion is granted as to the plaintiff's allegations concerning fringe benefits since they occurred prior to the 180 day limitations period.

#### 3. *Derogatory Statements and Correspondence*

The plaintiff alleges that he has been "unfairly treated and has been forced to endure derogatory statements, correspondence, and personal comments because of his age." Am.Cplt. at ¶ 8(D). The defendants have denied that the plaintiff was ever unfairly treated or subjected to any derogatory comments because of his age. Correspondence from Dr. Putman to the plaintiff from June 25, 1980 (attached as exhibits to Dr. Putman's affidavit) do not evidence any bias directed toward the plaintiff because of his age. Indeed, the plaintiff concedes that Dr. Putman made no such derogatory comments regarding the plaintiff's age in 1980 or later. Affidavit of Aaron P. Sanders at ¶ 8, September 4, 1981. Thus, the defendants' motion is granted with respect to derogatory statements since they occurred, if ever, prior to the 180 day limitations period.

#### 4. *Salary Adjustments*

The plaintiff alleges that he was denied salary adjustments for 1977, 1978, 1979, and 1980. Am.Cplt. at ¶ 8(A). With the exception of his claim for 1980, the defendants' motion is granted since the rest of his salary claims occurred prior to the limitations period.

### II. PENDENT CLAIM

■ The gravamen of the plaintiff's state claim is that in pursuing his claim of age discrimination before Duke University's Faculty Discrimination Grievance Committee, he was refused a hearing and an attempt to conciliate in violation of his contractual rights under North Carolina law.

■ The Supreme Court has held that federal courts may exercise pendent jurisdiction over state law claims where the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). When, however, the events which constitute the plaintiff's federal claim occurred prior in time to those which constitute the state law claim, the court does not have pendent jurisdiction. *Beach v. KDI Corp.,* 490 F.2d 1312, 1319 (3d Cir. 1974); *Wilder v. Irvin,* 423 F.Supp. 639 (N.D.Ga.1976). For example, there is no pendent jurisdiction when a plaintiff's state law claim is "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the [federal] court." *Hales v. Winn-Dixie Stores, Inc.,* 500 F.2d 836, 848 (4th Cir. 1974).

In this case, the plaintiff's federal and state law claims do not derive from a "common nucleus of operative facts." Rather, they are based on entirely distinct facts and the alleged acts of different persons. The plaintiff has not alleged that his employment contract was breached because of his age; rather, his state and federal claims "present entirely different elements of proof and theories of recovery." *Wilder v. Irvin,* 423 F.Supp. at 642.

Moreover, this is a case where the plaintiff's federal and state law claims present different elements of proof and issues of law. In a similar case, a federal court declined to exercise pendent jurisdiction when the plaintiff presented federal claims under the ADEA and state claims for breach of contract and tortious infliction of emotional distress. *Kennedy v. Mountain States Telephone & Telegraph Co.,* 449 F.Supp. 1008 (D.Colo.1978). Even though all claims dealt with the plaintiff's termination from employment and, thus, derived from a "common nucleus of operative fact," the court refused to consider the pendent claim:

> The breach of contract claim lacks sufficient relationship to the federal cause of action to convince this court that pendent

jurisdiction should be exercised. The inevitable complications in matters of proof and concomitant clouding of issues supports this conclusion.

*Id.* at 1011; *see also Douglas v. American Cyanamid Co.,* 472 F.Supp. 298 (D.Conn. 1979) (court will not exercise pendent jurisdiction over defamation claims joined with claims under the ADEA) and *Avery v. City of Chicago,* 501 F.Supp. 1 (N.D.Ill.1978) (court will not exercise pendent jurisdiction over claim that city ordinance had been violated along with claim of racial discrimination).

■ Finally, "[w]here the proper resolution of the state law question is unclear, a federal court may properly decline to address the pendent issue." *W. A. Krueger Co. v. Kirkpatrick, Pettis, Smith, Polian, Inc.,* 466 F.Supp. 800, 804 (D.Neb.1979); *accord, Pride v. Community School Board,* 482 F.2d 257 (2d Cir. 1973); *Avery v. City of Chicago,* 501 F.Supp. at 4; *Grey v. European Health Spas, Inc.,* 428 F.Supp. 841, 848 (D.Conn.1977). The question of whether a university's faculty handbook is part of an employment contract between a university and its faculty members has not been addressed by the North Carolina courts. *See Thomas v. Catawba College,* 248 N.C. 609, 104 S.E.2d 175 (1958) (question avoided). Accordingly, the courts of North Carolina, not a federal court, should initially resolve the issue.

For the foregoing reasons, the plaintiff's pendent claim is dismissed without prejudice.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the defendants' motion to dismiss, or in the alternative, for partial summary judgment is granted except as to the plaintiff's ADEA claim concerning his salary adjustment for the year 1980. As to that claim, the defendants' motion is denied.