Dodge v. Appalachian Energy, LLC, 2021 NCBC 33.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 1456

GLORIA M. DODGE, individually
and derivatively for the benefit of
Appalachian Energy, LLC,

Plaintiff,

v.

APPALACHIAN ENERGY, LLC;
SCOTT CLARK; and LYNNE
CLARK, Personal Representative of
the Estate of David A. Clark,

Defendants.

**ORDER AND OPINION
ON DEFENDANTS' MOTIONS
TO DISMISS AND FOR JUDGMENT
ON THE PLEADINGS**

1.     Gloria Dodge inherited her husband Wes's interest in Appalachian Energy, LLC in mid-2017.  The company was dissolved later that year.  In this action, Gloria contends that she did not receive her fair share of assets during the dissolution due to long-term self-dealing by two other members, David Clark (now deceased) and Scott Clark.  The complaint includes a variety of individual and derivative claims for relief.

2.     The defendants deny the allegations and contend that Gloria is not and never has been a member of Appalachian Energy.  They have filed two motions to dismiss the complaint in its entirety under Rule 12 of the North Carolina Rules of Civil Procedure.  For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motions.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Stephen Grabenstein, for Plaintiff Gloria M. Dodge.*

*Brazil & Burke, P.A., by Meghann Burke and Wilburn Brazil, III, for Defendant Lynne Clark.*

*Parker Poe Adams & Bernstein LLP, by Adam Setzer and Melanie B. Dubis, for Defendants Appalachian Energy LLC and Scott Clark.*

Conrad, Judge.

I.

BACKGROUND

3. The following background assumes that the allegations in the complaint are true.

4. The events giving rise to this litigation began in 2006 when Appalachian Energy acquired a mortgage-financed interest in a real estate development called Fletcher Business Park. (*See* Compl. ¶ 11, ECF No. 3.) The expectation was that the property would eventually produce enough rental income to allow Appalachian Energy to pay off the mortgage, repay its members' capital contributions, and make distributions of surplus cash. (*See* Compl. ¶ 12.) At that time, Appalachian Energy's members included Wes Dodge, David Clark, Scott Clark (David's son), and others. (*See* Compl. ¶¶ 7, 8.)

5. It took nearly seven years for Appalachian Energy to pay off the mortgage. (*See* Compl. ¶ 20.) At the end of 2012, just before the final payment, David and Scott "signed promissory notes on behalf of [Appalachian Energy] payable to themselves." (Compl. ¶ 17.) The notes required Appalachian Energy to prioritize payments to David and Scott over distributions to other LLC members. (Compl. ¶ 17.) Wes did not learn about the notes until much later. (*See* Compl. ¶¶ 18, 22.)

6. Around the time they signed the promissory notes, David and Scott also prepared financial reports showing that Wes owed a substantial debt to Appalachian Energy. (*See* Compl. ¶ 19.) The debt related to company assets supposedly taken by

Wes. As alleged, Wes did nothing wrong and should not have been charged for the assets. (*See* Compl. ¶ 19.)

7. A few years passed. In 2016, two unnamed members of Appalachian Energy asserted "claims in connection with the structured notes." (Compl. ¶ 23.) In lieu of pressing those claims, the unnamed members agreed to sell their interests in the company to David and Scott. (*See* Compl. ¶ 23.) David's interest increased from roughly 25% to over 31%; Scott's interest increased from roughly 25% to nearly 39%. (*See* Compl. ¶ 28.) Wes did not receive notice of the sale, which allegedly violated Appalachian Energy's operating agreement. (*See* Compl. ¶¶ 24, 25.)

8. Wes and David died just a few months apart in 2017. (*See* Compl. ¶ 35; Lynne Clark Answer at 11, ECF No. 16.) Wes left his interest in Appalachian Energy to Gloria. This testamentary transfer, Gloria alleges, automatically made her a member of the company. (*See* Compl. ¶ 35.) Later in 2017, Appalachian Energy sold its interest in Fletcher Business Park and then filed articles of dissolution. (*See* Compl. ¶¶ 30, 31.) Neither Wes nor Gloria had given consent to dissolve the company. (*See* Compl. ¶ 31.)

9. During dissolution, most of the proceeds from the sale of Fletcher Business Park were allocated to pay off the notes held by David and Scott. (*See* Compl. ¶ 33.) The company also assigned over $90,000 in debt to Wes and charged that debt against Gloria's interest. (*See* Compl. ¶¶ 19, 34.) As a result, much of Gloria's share of Appalachian Energy's assets went to David's estate and Scott. (*See, e.g.*, Compl. ¶¶ 30, 32–34.)

10.    Gloria filed this suit in April 2020, naming Scott, David's estate (through its representative), and Appalachian Energy as defendants.  She accuses David and Scott of self-dealing and other wrongful acts, which diluted the interest she inherited from her husband.  The complaint asserts individual claims for fraud, constructive fraud, breach of fiduciary duty, conversion, unjust enrichment, and unfair or deceptive trade practices under N.C.G.S. § 75-1.1.  The complaint also asserts derivative claims, on behalf of Appalachian Energy, for breach of fiduciary duty and constructive fraud.

11.    Each defendant timely answered the complaint and denied any wrongdoing. (*See* ECF Nos. 8, 16.)  After entry of the case management order, the defendants filed two essentially identical motions that seek to dismiss the complaint in its entirety. (*See* ECF Nos. 47, 49.)  With the consent of all parties, the Court stayed discovery pending resolution of the motions.  (ECF No. 45.)  After full briefing and a hearing in February 2021, the motions are now ripe for disposition.

## II.
## LEGAL STANDARD

12.    Although both motions cite various subsections of Rule 12, they are effectively motions for judgment on the pleadings under Rule 12(c).  A motion for judgment on the pleadings "should be granted when a complaint fails to allege facts sufficient to state a cause of action." *Robertson v. Boyd*, 88 N.C. App. 437, 440 (1988). When ruling on a Rule 12(c) motion, "[a]ll well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false." *Ragsdale v. Kennedy*, 286 N.C. 130, 137

(1974) (citations omitted). The Court may "consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204 (2007) (citation and quotation marks omitted).

13. The same standard applies to the jurisdictional challenges at issue. When assessing its jurisdiction, the Court "may consider matters outside the pleadings." *Harris v. Matthews*, 361 N.C. 265, 271 (2007) (citations omitted). Here, though, no defendant has introduced evidence outside the pleadings. The Court therefore decides only whether the complaint adequately alleges facts to support the exercise of jurisdiction. To do so, the Court must accept "as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff." *Munger v. State*, 202 N.C. App. 404, 410 (2010) (citation and quotation marks omitted).

## III.
## ANALYSIS

14. Gloria asserts a mix of individual and derivative claims. The Court begins with the latter.

### A. Derivative Claims

15. By statute, only "a member may bring a derivative action" on behalf of a limited liability company. N.C.G.S. § 57D-8-01(a). The parties dispute whether Gloria is a member of Appalachian Energy and, thus, whether she has standing to assert derivative claims on its behalf. *See, e.g.*, *Willowmere Cmty. Ass'n v. City of Charlotte*, 370 N.C. 553, 561 (2018) (describing standing as "a necessary prerequisite

to a court's proper exercise of subject matter jurisdiction" (citation and quotation marks omitted)).

16. It is undisputed that Wes was a member of Appalachian Energy before his death in 2017. Gloria contends that, under Appalachian Energy's operating agreement, she automatically became a member upon inheriting Wes's interest. The defendants disagree, contending that the testamentary transfer gave her an economic interest but not admission to membership.

17. This dispute turns on familiar principles of contract interpretation. "A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law." *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 273 (2008) (citation omitted). "Presumably the words which the parties select were deliberately chosen and are to be given their ordinary significance." *Briggs v. Am. & Efird Mills, Inc.*, 251 N.C. 642, 644 (1960) (citations omitted).

18. The operating agreement is unambiguous on this issue. A transfer of membership units, including a testamentary transfer to a spouse, is not by itself sufficient to admit the transferee as a member of Appalachian Energy. This is clear from section 4.3, which states that a member ceases to be a member upon death and that "[i]n no event . . . shall a personal representative or successor become a substitute Member unless the requirements of Section 8.3 are satisfied." (Op. Agrmt. § 4.3, ECF No. 48.1.) Section 8.3, in turn, states that "[n]o assignee or transferee of . . . Membership Units shall be admitted as a substituted Member of the Company"

without first satisfying several conditions (for example, paying the costs of admission and agreeing to be bound by the operating agreement). (Op. Agrmt. § 8.3.)

19. Gloria's contrary interpretation is not persuasive. She relies largely on a provision governing transfers from members to their spouses: "Notwithstanding anything to the contrary contained herein, testamentary transfers of Membership Units to spouses shall be automatically permitted and shall not require the consent of the Members and shall not constitute a Buy-Sell event." (Op. Agrmt. at 18.)[1] This provision says nothing about admission to membership. It simply makes clear that a testamentary transfer of membership units does not require consent from other members (unlike other transfers, which do require consent) or give those other members an option to purchase the units under the "Buy-Sell" process in the operating agreement.

20. Gloria insists that there is an ambiguity because the operating agreement defines the phrase "Membership Units" to mean "all of a Member's rights in the Company," including the right to vote and participate in management. (Op. Agrmt. at 8.) According to Gloria, the testamentary transfer of Wes's membership units, defined in this way, gave her more than just his economic interest in Appalachian Energy. She contends that she also received the rights and privileges of membership, including the right to bring a derivative action.

21. There is no ambiguity. Twice, the operating agreement states that a transfer of "Membership Units"—as defined in the agreement—does not suffice to

---

[1] There are two sections designated as 8.4 in the operating agreement. This language appears in the second section 8.4.

admit the transferee as a member. "Unless admitted to the Company in accordance with Section 8.3, the transferee of . . . Membership Units" has economic rights but does not enjoy the rights and privileges of membership. (Op. Agrmt. at 18.)[2] "No assignee or transferee of . . . Membership Units shall be admitted as a substituted Member" except by satisfying the conditions stated in section 8.3. (Op. Agrmt. § 8.3.)

22. In short, "[n]o assignee or transferee" means just what it says. Nothing in the operating agreement, including the provision governing testamentary transfers to spouses, permits admission to membership absent compliance with section 8.3. The complaint does not allege that Gloria has satisfied the conditions for admission to membership stated in that section. Gloria does not argue otherwise. As a result, the Court concludes that Gloria has not adequately alleged that she is a member of Appalachian Energy with standing to assert derivative claims on its behalf. The Court therefore dismisses the derivative claims without prejudice. *See N.C. Acupuncture Licensing Bd. v. N.C. Bd. of Physical Therapy Exam'rs*, 2016 NCBC LEXIS 33, at *27 n.8 (N.C. Super. Ct. Apr. 26, 2016) ("A dismissal for lack of jurisdiction is generally a dismissal without prejudice.").

## B. Individual Claims

23. Even if not a member, Gloria may be an economic interest owner and may be able to assert individual claims based on that interest. The Court now turns to these claims.

---

[2] This language appears in the first section 8.4.

*1. Breach of Fiduciary Duty & Constructive Fraud.*

24. Breach of fiduciary duty and constructive fraud are distinct causes of action with overlapping elements. "An essential element of each is the existence of a fiduciary relationship." *Brown v. Secor*, 2017 NCBC LEXIS 65, at *18 (N.C. Super. Ct. July 28, 2017) (citations omitted).

25. The complaint pleads these claims in a confusing fashion. It appears that many of the alleged breaches occurred before Wes's death and, thus, before Gloria received her interest in the company. (*See* Compl. ¶ 48(a)–(c).) Other alleged breaches occurred after Wes's death and, apparently, after David's death as well. (*See* Compl. ¶ 48(d)–(f).) These events surely matter for purposes of determining whether and when a fiduciary relationship existed between one individual and another. Yet neither side addresses their significance. The Court limits its discussion to the arguments as made and framed by the parties.

26. In short, the defendants point to the general rule that LLC members do not owe a fiduciary duty to each other or to the company. *See, e.g., Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473–74 (2009). Gloria responds that, in some cases, a majority member who exercises control over the LLC owes a fiduciary duty to minority members. *See, e.g., Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *17–18 (N.C. Super. Ct. June 19, 2019). According to Gloria, David and Scott had a combined interest in Appalachian Energy that exceeded 50% and jointly exercised control over the company, thus establishing a fiduciary duty.

27. Gloria's argument is unpersuasive for two reasons. First, it is based on a theory and contentions that are not alleged in the complaint. Paragraph 53 alleges generically that David and Scott "were in a confidential relationship with Wes and the Plaintiff." (Compl. ¶ 53.) Paragraph 57 alleges, in equally generic fashion, that "Wes and the Plaintiff placed special confidence in" David and Scott. (Compl. ¶ 57.) There are no allegations, factual or otherwise, to support the contention that David and Scott acted as a control group or jointly exercised actual control over Appalachian Energy.

28. Second, this Court has often "refused to impose a fiduciary duty on *minority* members that exercise their voting rights by joining together to outvote a third member." *Vanguard Pai Lung*, 2019 NCBC LEXIS 39, at *20 (collecting cases); *see also, e.g.*, *HCW Ret. & Fin. Servs., LLC v. HCW Emp. Benefit Servs., LLC*, 2015 NCBC LEXIS 73, at *46–47 (N.C. Super. Ct. July 14, 2015). Gloria does not address or distinguish these cases.

29. Gloria has not offered any other basis to support the existence of a fiduciary relationship based on the facts as alleged. The Court therefore grants the motions as to the individual claims for breach of fiduciary duty and constructive fraud.

*2. Unjust Enrichment and Conversion.*

30. The claims for conversion and unjust enrichment are premised on the same allegations: that part or all of Gloria's share of assets from the dissolution went instead to David's estate and Scott. The defendants do not challenge the elements of conversion or unjust enrichment. Rather, they contend that these claims rest on

injuries to Appalachian Energy and therefore belong to the company. On that basis, they contend that Gloria lacks standing to pursue individual claims.

31. The Court disagrees. Gloria alleges that she was entitled to a share of assets commensurate with her percentage interest in the company but that she did not receive it. One basis for the claims is that David and Scott improperly charged her interest with a debt owed to Appalachian Energy. (*See* Compl. ¶¶ 64, 68–70.) The assignment of debt is, if anything, a benefit to Appalachian Energy, not an injury to it. Thus, it appears that Gloria has alleged an injury caused directly to her rather than one derivative of an injury to the company. *See 759 Ventures, LLC v. GCP Apartment Invs., LLC*, 2018 NCBC LEXIS 82, at *8–9 (N.C. Super. Ct. Aug. 13, 2018).

32. There may be other allegations in the complaint that, if true, tend to show wrongful acts by David and Scott that injured Appalachian Energy. To the extent Gloria bases her claims for conversion and unjust enrichment on those allegations, her recovery may be limited. But that issue is better suited to review on a more complete record at summary judgment. For now, the Court concludes only that Gloria has adequately alleged facts to support her standing to pursue these claims.

*3. Fraud.*

33. "Fraud has five 'essential elements': (a) a false representation or concealment of a material fact, (b) calculated to deceive, (c) made with intent to deceive, (d) that did in fact deceive, and (e) that resulted in damage to the injured party." *Lunsford v. ViaOne Servs., LLC*, 2020 NCBC LEXIS 127, at *19 (N.C. Super.

Ct. Oct. 23, 2020) (quoting *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992)). A plaintiff must plead fraud with particularity. *See* N.C. R. Civ. P. 9(b).

34. Even taking the complaint's allegations as true, it fails to state a claim for fraud. The complaint specifies six grounds for fraud. Five do not involve a false representation or concealment of a material fact. (*See* Compl. ¶ 48(a), (c)–(f) (alleging, for example, that David and Scott improperly bought the interests of other LLC members, increased their own interests, and assigned debt to Wes).) These allegations therefore omit an essential element of the claim.

35. The sixth ground is that David and Scott concealed their purchases of other members' interests. (*See* Compl. ¶ 48(b).) "[S]ilence is fraudulent only when there is a duty to speak." *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *8 (N.C. Super. Ct. June 18, 2007) (citation omitted). To claim fraud based on concealment, a plaintiff must allege, among other things, the circumstances "giving rise to the duty to speak" and "why plaintiff's reliance on the omission was both reasonable and detrimental." *Lunsford*, 2020 NCBC LEXIS 127, at *20 (citation omitted); *see also Tillery Env't, LLC v. A&D Holdings, Inc.*, 2018 NCBC LEXIS 13, at *21–22 (N.C. Super. Ct. Feb. 9, 2018). The complaint does not plead either with the required particularity.

36. For these reasons, the Court grants the motions as to Gloria's individual claim for fraud.

*4. N.C.G.S. § 75-1.1.*

37.   The General Assembly has declared that "unfair or deceptive acts or practices in or affecting commerce" are "unlawful." N.C.G.S. § 75-1.1.  Though broad, the language of this statute does not address "unfair or deceptive conduct contained solely within a single business." *White v. Thompson*, 364 N.C. 47, 53 (2010).  This is because disputes "solely related to the internal operations" of a business are not in or affecting commerce.  *Id.* at 52.

38.   Here, all the alleged wrongdoing was internal to Appalachian Energy.  The complaint alleges that David and Scott breached the operating agreement, concealed company information, misused company assets, and wrongfully increased their interests at the expense of other members. (*See, e.g.*, Compl. ¶¶ 17, 19, 24, 29, 33, 34, 36.)   This Court routinely dismisses section 75-1.1 claims based on similar allegations. *See, e.g.*, *Upchurch v. Sapp*, 2020 NCBC LEXIS 118, at *7–8 (N.C. Super. Ct. Oct. 8, 2020) (collecting cases).

39.   Gloria argues that the alleged misconduct affected commerce because it involved misuse of the proceeds from Appalachian Energy's sale of property to a third party.  But the potential unfairness from the misuse of the proceeds has nothing to do with the third party.  Rather, any potential unfairness "inheres in the relationship between" the members of Appalachian Energy.  *Potts v. KEL, LLC*, 2018 NCBC LEXIS 24, at *15 (N.C. Super. Ct. Mar. 27, 2018).  The "tangential" or "indirect" involvement of a third party does not "trigger liability" under section 75-1.1.  *JS Real*

*Est. Invs. LLC v. Gee Real Est., LLC*, 2017 NCBC LEXIS 104, at *21 (N.C. Super. Ct. Nov. 9, 2017) (citations and quotation marks omitted).

40. The Court therefore dismisses the section 75-1.1 claim.

IV.
CONCLUSION

41. For these reasons, the Court **GRANTS in part** and **DENIES in part** the motions as follows:

a. The Court **DISMISSES** without prejudice Gloria's derivative claims due to lack of standing.

b. The Court **DISMISSES** without prejudice Gloria's individual claims for breach of fiduciary duty, constructive fraud, and fraud.

c. The Court **DISMISSES** with prejudice Gloria's individual claim for unfair or deceptive trade practices under N.C.G.S. § 75-1.1.

d. The Court **DENIES** the motions as to Gloria's individual claims for conversion and unjust enrichment.

42. The Court dissolves the stay of discovery entered in December 2020. (*See* ECF No. 45.) Within twenty days from the date of this Order, the parties shall jointly file a proposed protective order, a revised case management report, and an amended proposed case management order.

**SO ORDERED**, this the 27th day of May, 2021.


                                    /s/ Adam M. Conrad
                                    Adam M. Conrad
                                    Special Superior Court Judge
                                     for Complex Business Cases